742 S.E.2d 375

The **STATE**, Respondent,

v.

John **HERNDON**, Appellant.

Appellate Case No. 2011–184909.

No. 27250.

Supreme Court of South Carolina.

Heard March 5, 2013.
Decided May 8, 2013.

Appellate Defender Susan Barber Hackett, of South Carolina Commission on Indigent Defense, of Columbia, for Appellant.

Tommy Evans, Jr., of South Carolina Department of Probation, Parole, and Pardon Services, of Columbia, for Respondent.

Chief Justice TOAL.

John Herndon (Appellant) appeals the circuit court's order imposing lifetime sex offender registration for his failure to complete sex abuse counseling required by the terms of his probation. We affirm.

### FACTUAL/PROCEDURAL HISTORY

On July 26, 2007, the Beaufort County Grand Jury indicted Appellant for criminal sexual conduct with a minor in the first degree (CSC–First) in violation of section 16–3–655 of the South Carolina Code. On July 1, 2010, Appellant and the State negotiated a plea to Assault and Battery of a High and Aggravated Nature (ABHAN) pursuant to *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)

(*Alford* plea). The negotiated plea included a sentence of ten years' imprisonment suspended upon the service of five years' probation, and also included two special conditions prohibiting Appellant from contacting the victim, or her family, and requiring Appellant to successfully complete sex abuse counseling. According to the terms of the negotiated plea, Appellant would face lifetime sex offender registration if he failed to successfully complete sex abuse counseling.

The circuit court explained to Appellant the significance of his *Alford* plea:

> The Court: What you are basically doing is you are pleading guilty but you say I'm just doing this to get it over with. I'm not really admitting I did it, but I will go ahead and plead that I did it and suffer the consequences?
>
> Appellant: Yes, sir. I'm not guilty but I'm pleading to this—
>
> The Court: That's what you are doing?
>
> Appellant: Because I'm three years into this—
>
> The Court: If you enter your plea, even if you say it's under *Alford, you subject yourself to being sentenced just like you were pleading guilty straight up*; do you understand that?
>
> Appellant: Yes.

(emphasis added).

The circuit court also explained the sex abuse counseling requirement of Appellant's probation:

> The Court: Now the other condition that I heard is you've got to complete sex offender counseling. If you don't successfully complete that, you are going to have to register as a sex offender forever. Believe me, that's about worse than going to jail?
>
> Appellant: I agree.
>
> . . . .
>
> The Court: Anyway, if you don't like that sex offender counseling once you start it, you can stop it but there are going to be even worse consequences. Do you understand that?
>
> Appellant: Yes, sir.

The Court: Do you think you can comply with probation if I accept the negotiation?

Appellant: Yes, sir.

The circuit court accepted the negotiated plea, and sentenced Appellant under the plea's terms. Prior to the conclusion of the proceeding, the circuit court reminded Appellant of the importance of fulfilling the negotiated plea's counseling requirement:

> The Court: You must *successfully complete* sex abuse counseling. If not completed, you must register as a sex offender. And that's forever. Do you have any questions?
>
> Appellant: No, sir.

(emphasis added).

Appellant initially complied with his probation requirements and began sex abuse counseling with SouthEastern Assessments (SEA) in July 2010. SEA's sex abuse counseling methodology called for Appellant to accept responsibility for the underlying acts of his conviction while undergoing at least three polygraph examinations. The Record suggests that Appellant submitted to at least two polygraph examinations. Appellant failed a polygraph examination on September 15, 2010, and then admitted that he abused the victim in this case, providing details of the abuse. On October 26, 2010, Appellant informed his probation agent that he would not attend a third polygraph examination, although he desired to comply with required sex abuse counseling. Appellant claimed his probation required him to complete sex abuse counseling, but not a polygraph examination, and that he did not want to admit guilt to a sex offense because he pled guilty to ABHAN. As a consequence, Appellant's probation agent issued him a Probation Citation charging Appellant with violating a special condition of his probation:

> Appellant has been instructed by his agent to complete Sex Abuse Counseling with [SEA]. [SEA] requested [Appellant], as part of his counseling, to complete a 3rd and subsequent lie detector test in order to be allowed to attend sex abuse counseling classes. [Appellant] has refused to attend any further lie detector test[s] although he has stated he is willing to attend counseling classes. [Appellant] has failed

to follow the advice and instructions of his agent and special condition that he successfully complete sex abuse counseling.

(alterations added).

On November 8, 2010, SEA terminated Appellant from the sex abuse counseling program due to noncompliance, informing Appellant's probation agent that, "The use of the polygraph is a standard of care as established by the Association for the Treatment of Sexual Abusers (ATSA), an international organization dedicated to the assessment and treatment of sexual offenders."

Appellant appeared before the circuit court on November 18, 2010, regarding the alleged probation violation. The circuit court continued Appellant's probation and ordered Appellant to successfully complete the required sex abuse counseling. However, on January 12, 2011, Appellant received another Probation Citation alleging that he failed to comply with the sex abuse requirement:

Failure to follow the advice and instructions of his agent and the continuation order by [the circuit court] on 11/18/2010 by: Not being able to attend sex offender counseling, offender will NOT admit his guilt, which is a requirement of sex offender counseling. This action constitutes a violation of his original agreement.

(emphasis in original) (alterations added).

On January 28, 2011, Appellant again appeared before the circuit court regarding his second alleged probation violation. Appellant argued that at his original sentencing, the circuit court did not provide adequate notice that Appellant would have to admit guilt as part of his sex abuse counseling. The circuit court rejected Appellant's assertion:

It's clear, from [the] sentencing sheet, condition two of the sentence that [Appellant], one, must complete it and he doesn't complete it he's got to register. It's an either or proposition and that's my reading of it. It's an either or proposition. He hasn't completed it. He's been given every opportunity to complete it. I think he was in front of [the circuit court] last month.... [The circuit court] ordered him to go back and he didn't complete it.... Because he hasn't successfully completed sex abuse counseling, I'm

going to order that he now has to register as a sex offend-
er. . . . He's had the opportunity to go through sex abuse
counseling. He has not successfully completed it as ordered
by [the circuit court] and so therefore, I am ordering that
he register as a sex offender based on his failure to com-
plete counseling.

(alterations added).

Appellant appealed the circuit court's decision, and this
Court certified the case for review pursuant to Rule 204(b),
SCACR.

## ISSUE PRESENTED

Whether the circuit court erred in requiring Appellant to
register as a sex offender for failing to complete sex abuse
counseling when Appellant failed to complete sex abuse
counseling as a result of his refusal to admit guilt, and
Appellant was not given prior notice that completion of
counseling would require such an admission.

## STANDARD OF REVIEW

■■■ The determination to revoke probation is within the
discretion of the circuit court. *State v. Ellis*, 397 S.C. 576,
579, 726 S.E.2d 5, 6 (2012) (citing *State v. White*, 218 S.C. 130,
135, 61 S.E.2d 754, 756 (1950)). This Court's authority to
review the findings of a lower court regarding probation
revocation and related issues is confined to the correction of
errors of law, unless it appears that the action of the circuit
court amounted to a manifest abuse of discretion. *Id.*

## LAW/ANALYSIS

■■■ Appellant claims that the circuit court failed to provide
adequate notice that a condition of his probation required him
to admit guilt. The gravamen of Appellant's claim is that his
*Alford* plea allowed him to maintain his innocence, and there-
fore, he should not have to comply with a probation sanction
which requires him to accept responsibility for the crime.
Alternatively, Appellant argues that, at the very least, due
process required the circuit court inform Appellant of this
possibility. We disagree.

In *Alford,* a grand jury indicted the defendant, Henry Alford, for first degree murder. *Alford,* 400 U.S. at 26, 91 S.Ct. 160. Alford directed his attorney to interview several witnesses that Alford claimed would confirm his innocence. *Id.* at 27, 91 S.Ct. 160. However, the witnesses did not support Alford's claim, and instead provided statements strongly indicating Alford's guilt. *Id.* Alford's attorney recommended that he plead guilty, and the prosecutor agreed to accept a guilty plea to second degree murder. *Id.* Alford, of his own volition, pled guilty to the reduced charge. *Id.* Prior to acceptance of the plea, the trial court heard sworn testimony from a police officer and two witnesses that supported the narrative that shortly before the killing Alford took his gun from his house, stated his intention to kill the victim, and returned home with the declaration that he had carried out the killing. *Id.* at 28, 91 S.Ct. 160. Alford testified that he did not commit the murder but pled guilty because he faced a possible death sentence if convicted. *Id.* at 28–29, 91 S.Ct. 160. The trial court asked Alford whether he desired to plead guilty in light of his denial of guilt, and Alford confirmed that he did. *Id.* The trial court then sentenced Alford to thirty years' imprisonment. *Id.*

Alford later filed a habeas petition, and argued that his guilty plea was the product of fear and coercion, and therefore invalid. *Id.* A divided panel of the United States Court of Appeals for the Fourth Circuit agreed. *Id.* at 30, 91 S.Ct. 160. However, the United States Supreme Court reversed, and held that the mere fact Alford pled guilty primarily to limit a possible penalty did not necessarily demonstrate that his plea was not the product of free and rational choice. *Id.* at 31, 91 S.Ct. 160. According to the Supreme Court, the strong factual basis for the plea and Alford's expressed desire to enter the plea prevented any constitutional deprivation:

> Confronted with the choice between a trial for first-degree murder, on the one hand, and a plea of guilty to second-degree murder, on the other, Alford quite reasonably chose the latter and thereby limited the maximum penalty to a 30–year term. When his plea is viewed in light of the evidence against him, which substantially negated his claim of innocence and which further provided a means by which the

judge could test whether the plea was being intelligently entered, its validity cannot be seriously questioned.

*Id.* at 38, 91 S.Ct. 160 (citation omitted); *see also Gaines v. State,* 335 S.C. 376, 380–81, 517 S.E.2d 439, 441–42 (1999) (establishing that the trial court must determine the voluntariness of a defendant's *Alford* plea pursuant to factors outlined in *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)); *Baxley v. State,* 255 S.C. 283, 286, 178 S.E.2d 535, 536 (1971) (recognizing the *Alford* plea's validity).

■ The primary thrust of the *Alford* decision is that a defendant may voluntarily and knowingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit he participated in the acts constituting the crime. *United States v. Morrow,* 914 F.2d 608, 611 (4th Cir.1990). The *Alford* plea is, in essence, a guilty plea and carries with it the same penalties and punishments.[1] *See, e.g., Carroll v. Virginia,* 280 Va. 641, 701 S.E.2d 414, 420 (2010) ("We hold further that Carroll's failure to receive warning at the time he entered his *Alford* plea that such a refusal could result in the revocation of his probation is a collateral and not a direct consequence of his plea and does not render the revocation improper."); *Perry v. Virginia,* 33 Va.App. 410, 533 S.E.2d 651, 652–53 (2000) (holding that *Alford* pleas are treated the same as guilty pleas and thus by freely and intelligently entering an *Alford* plea, the defendant waived his right to appeal the issue of whether the evidence was sufficient to prove beyond a reasonable doubt that he was guilty of the charge).

---

1. Thus, courts are generally required to confirm that a factual basis exists for the *Alford* plea. *See Morrow,* 914 F.2d at 611 (holding that trial court has wide discretion in determining this factual basis, and is not required to replicate the trial that the prosecutor and defendant entered a plea agreement to avoid); *see also Higgason v. Clark,* 984 F.2d 203, 208 (7th Cir.1993), *cert. denied,* 508 U.S. 977, 113 S.Ct. 2974, 125 L.Ed.2d 672 (1993) ("Whether a choice is informed and reached without inappropriate pressure—that is, whether it is voluntary—depends on the information known and options open to the defendant, including what he has learned out of court."); *United States v. Fountain,* 777 F.2d 351, 357 (7th Cir.1985), *cert. denied,* 475 U.S. 1029, 106 S.Ct. 1232, 89 L.Ed.2d 341 (1986) ("Turning to the specifics of the present appeal, we must re-emphasize the dual responsibility of the prosecutor and the judge in establishing a factual basis for a guilty plea, and more importantly, the mutually exclusive nature of that responsibility.").

This Court touched on the minimal differences between an *Alford* plea and a standard guilty plea in the punishment context with its decisions in *State v. Ray*, 310 S.C. 431, 427 S.E.2d 171 (1993) and *Zurcher v. Bilton*, 379 S.C. 132, 666 S.E.2d 224 (2008).

In *Ray*, this Court held that an *Alford* plea may provide a valid basis for imposition of the death penalty. In that case, a grand jury indicted the defendant for assault and battery with intent to kill, armed robbery, first degree burglary, grand larceny, kidnapping, and murder arising from three different incidents which occurred during late August and early September 1990. *Ray*, 310 S.C. at 433, 427 S.E.2d at 172. The defendant sought to mitigate his culpability by claiming to have been voluntarily intoxicated during commission of the crimes, and entered an *Alford* plea to the kidnapping and murder charges. *Id.* at 434, 427 S.E.2d at 173. The trial court accepted the plea, and imposed a death sentence in the separate sentencing proceeding. *Id.*

The defendant argued on appeal that the trial court erred in accepting his guilty plea to capital murder in the absence of an admission of guilt, and that a death sentence should not rest on an *Alford* plea which does not include an explicit admission of guilt. *Id.* This Court disagreed:

> In determining the validity of a guilty plea, we are persuaded that the paramount concern is whether it was entered freely and voluntarily. We discern no prejudice to an accused in a capital punishment case who seeks to plead guilty without an explicit admission of guilt if such a plea would be in his best interests, and if freely and voluntarily made. In the present case, appellant does not claim innocence or allege that his guilty plea was involuntary, made under duress, or that the trial judge committed a constitutional violation. Therefore, we conclude that an *Alford* plea may form a valid basis for imposition of the death penalty.

*Id.* at 435, 427 S.E.2d at 173.

In *Zurcher*, this Court held that a defendant's *Alford* plea collaterally estops that defendant from litigating a civil claim based on the same facts as the criminal conviction, stating:

> We find no legal or practical justification for excluding guilty pleas from the ambit of the doctrine of collateral

estoppel. Although the defendant who enters a guilty plea has chosen a legal strategy which avoids a trial while the defendant who is adjudicated guilty has opted to take his chances at a contested trial, both are means to the same legal end: the imposition of the punishment prescribed by law.... An *Alford* plea is not distinguishable from a standard guilty plea in this regard. An *Alford* plea—a guilty plea accompanied by an assertion of innocence—was held to be a constitutional admission of guilt.... The *Alford* court reasoned that so long as a factual basis exists for a plea, the Constitution does not bar sentencing a defendant who makes a calculated choice to accept a beneficial plea arrangement rather than face overwhelming evidence of guilt. Under this same reasoning, we find that the defendant must likewise accept the collateral consequences of that decision. Therefore, we hold that the entry of an *Alford* plea at a criminal proceeding has the same preclusive effect as a standard guilty plea.

*Id.* at 136–37, 666 S.E.2d at 226–27.

This Court's decisions in *Ray* and *Zurcher* clearly establish that in South Carolina there is no significant distinction between a standard guilty plea and an *Alford* plea. The *Alford* plea may nevertheless offer advantages to both the state and the defendant by facilitating a more efficient trial, providing the defendant a choice that benefits her interests, or obviating a humiliating public admission of guilt. *See* Stephanos Bibas, *Harmonizing Substantive-Criminal Law Values and Criminal Procedure*, 88 Cornell L.Rev. 1361, 1373–74 (2003). However, under South Carolina law, the *Alford* plea does not create a special category of defendant exempt from the punishment applicable to her conviction. Thus, circuit courts are under no duty to provide notice to *Alford* defendants any differently than the notice provided to defendants entering a standard guilty plea, or those defendants adjudicated guilty. As the circuit court noted in the instant case, "If you enter your plea, even if you say it's under *Alford,* you subject yourself to being sentenced just like you were pleading guilty straight up." [2]

---

2. *See Colorado v. Birdsong,* 958 P.2d 1124, 1127 (Colo.1998) ("An *Alford* plea is a guilty plea. As such, the trial court's obligations to advise the

In the instant case, the circuit court ensured that Appellant understood that his *Alford* plea did not mean that he would be sentenced any differently than a guilty defendant. The Record demonstrates that Appellant maintained his innocence, but made a knowing, voluntary, and intelligent *Alford* plea to conclude the proceedings and place the matter behind him. Appellant simply failed to satisfy a condition of his probation, and the circuit court properly ordered him to register as sex offender for life as would have been appropriate for a defendant sentenced pursuant to a standard guilty plea.[3]

---

defendant were no greater than any other guilty plea. Similarly, the trial court's concession to the defendant in accepting the *Alford* plea did not create an implicit agreement to permit him to continue on probation in the violation of the clear and reasonable conditions of that probation."); *State ex rel. Warren v. Schwarz*, 219 Wis.2d 615, 579 N.W.2d 698, 707, 709 (1998) ("Put simply, an *Alford* plea is not the saving grace for defendants who wish to maintain their complete innocence. Rather it is a device that defendants may call upon to avoid the expense, stress, and embarrassment of trial and to limit one's exposure to punishment.... A circuit court's plea colloquy cannot reasonably be expected to encompass all treatment and conditions of probation which the defendant might need in the future."); *Idaho v. Jones*, 129 Idaho 471, 926 P.2d 1318, 1322 (App.1996) (holding that trial court did not deny the defendant due process by accepting his *Alford* plea and imposing a probation condition ordering the defendant complete sex abuse counseling requiring an admission of guilt).

3. Appellant attempts to place his claim within the ambit of the court of appeals' decision in *State v. Brown*, 349 S.C. 414, 563 S.E.2d 339 (Ct.App.2002). However, Appellant's case is distinguishable from *Brown*. In that case, the defendant pled guilty to two counts of CSC–First, and in addition to his prison sentence, the circuit court imposed a probation condition that the defendant obtain "treatment for problem." *Id.* at 415, 563 S.E.2d at 339. The defendant attended all sex abuse counseling sessions, but failed to admit guilt, and thus, his probation officer issued him a Probation Citation for violating the condition of his probation requiring him to obtain "treatment for problem." *Id.* at 415–16, 563 S.E.2d at 339–40. At a revocation hearing, the circuit court viewed ordering the defendant to "attend and successfully complete," as unnecessary, and that ordering mental health counseling and directing a defendant to "follow all advice," was sufficient. *Id.* at 417, 563 S.E.2d at 340. The court of appeals reversed, holding:

Here, the probation order unambiguously stated [the defendant] was to obtain treatment for his problem; it did not specifically order him to *complete* treatment. Nor did it specify that [the defendant] "must follow all advice" or anything of that nature. Moreover, even if the order were interpreted to mean [the defendant] had to successfully complete a treatment program, it did not on its face require him to

CONCLUSION

The foregoing authority and this Court's precedent demonstrate the general consensus that an *Alford* plea is merely a guilty plea with the gloss of judicial grace allowing a defendant to enter a plea in her best interests. Moreover, the defendant entering an *Alford* plea is still treated as guilty for the purposes of punishment, and simply put, is not owed anything merely because the State and the court have agreed to deviate from the standard guilty plea. In the instant case, the circuit court ordered Appellant to successfully complete sex abuse counseling or face lifetime sex offender registration. It is clear that this treatment would comprise counseling for the crime Appellant pled guilty to committing. Additionally,

complete a particular sex offender program or admit his guilt in order to do so. Finally, the record reflects the order's vague directive to "obtain treatment for problem" clearly resulted in confusion among the complaining probation agent, [the defendant's] mental health counselor, the [South Carolina Department of Probation, Parole, and Pardon Services (DPPPS)] administrative hearing officer, and the DPPPS prosecuting officer.

*Id.* at 418, 563 S.E.2d at 341 (emphasis in original) (alterations added). Although the court of appeals noted that the circuit court's order did not provide sufficient warning that he would have to admit guilt, the court also did not hold that probation orders must contain specific language regarding guilt. To the contrary, the court of appeals expressed approval of the circuit court's clarification of the order which mentioned only "successful completion of the program," and found error only with the circuit court refusal to allow the defendant the opportunity to comply with that interpretation. *Id.* at 418, 419–20, 563 S.E.2d at 341, 342. ("Although we agree with the circuit court's reading of the probation order, we find [the defendant] should have been afforded an opportunity to comply with that interpretation, particularly in light of the fact that he otherwise complied with all aspects of his probationary sentence.").

We agree with the court of appeals' analysis in *Brown*, and hold that a circuit court's order requiring successful completion of court ordered counseling provides a defendant with sufficient notice of her probation conditions. *See, e.g.*, *North Carolina v. Alston*, 139 N.C.App. 787, 534 S.E.2d 666, 669 (2000) ("[D]efendant's plea bargain set forth specified probationary conditions, which he agreed to perform, including "active" participation and "successful" completion of "a sexual offender treatment program," as well as defendant's stipulation that his "[f]ailure to fully participate and successfully complete" such program would "constitute immediate grounds for revocation" of his probation. Defendant not only agreed to such terms during the oral plea colloquy with the court, but personally, along with his counsel, signed the plea transcript incorporating the terms of the plea bargain.").

Appellant then received notice that he would need to admit guilt through his participation in the program, and the circuit court re-ordered Appellant to complete the counseling prior to the probation revocation. However, Appellant failed to comply. *See, e.g., New Hampshire v. Woveris,* 138 N.H. 33, 635 A.2d 454, 455 (1993) ("In this case, however, the defendant is hard-pressed to argue that he was not on notice of these requirements, particularly after the first probation revocation hearing, the entirety of which focused on his failure to participate adequately in the counseling programs because of his continued denial of culpability for his actions."). Therefore, for the foregoing reasons, we affirm the circuit court order imposing lifetime sex offender registration.

**AFFIRMED.**

PLEICONES, BEATTY, KITTREDGE, and HEARN, JJ., concur.