Present: Hassell, C.J., Koontz, Kinser, Lemons, Goodwyn, and Millette, JJ., and Carrico, S.J.

JAMES CARROLL

v. Record No. 091987

OPINION BY
SENIOR JUSTICE HARRY L. CARRICO
November 4, 2010

COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we decide whether a person charged with rape who enters an Alford plea and is placed on probation violates the terms of his probation by refusing to admit his guilt during the course of ordered treatment for sex offenders. The circuit court held that the defendant, James Carroll, was in violation of his probation for his refusal to make such an admission. The Court of Appeals of Virginia affirmed the judgment of the circuit court. We will affirm the judgment of the Court of Appeals.

THE ALFORD PLEA

The use of an Alford plea arose out of the Supreme Court's decision in North Carolina v. Alford, 400 U.S. 25 (1970). There, the Court held as follows:

> An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.

Id. at 37.

This Court explicated the Alford plea in Parson v. Carroll, 272 Va. 560, 636 S.E.2d 452 (2006). There, we stated as follows:

> Based on [the] holding in Alford, the courts in this Commonwealth in the exercise of their discretion have permitted criminal defendants who wish to avoid the consequences of a trial to plead guilty by conceding that the evidence is sufficient to convict them, while maintaining that they did not participate in the acts constituting the crimes. See e.g., Patterson v. Commonwealth, 262 Va. 301, 302 n. 1, 551 S.E.2d 332, 333 n.1 (2001); Reid v. Commonwealth, 256 Va. 561, 563 n.1, 506 S.E.2d 787, 788 n.1 (1998); Zigta v. Commonwealth, 38 Va. App. 149, 151 n.1, 562 S.E.2d 347, 348 n.1 (2002); Perry v. Commonwealth, 33 Va. App. 410, 412-13, 533 S.E.2d 651, 652-53 (2000).

Id. at 565-66, 636 S.E.2d at 455. See also the following cases in which defendants made Alford pleas since Parson: Malbrough v. Commonwealth, 275 Va. 163, 168, 655 S.E.2d 1, 3 (2008); Neighbors v. Commonwealth, 274 Va. 503, 506, 650 S.E.2d 514, 515 (2007).

                            BACKGROUND

On June 18, 2007, a grand jury in the Circuit Court of Arlington County indicted James Carroll for the rape of a child less than thirteen years of age. Code § 18.2-61. The rape occurred between 1982 and 1984, and the child was Carroll's stepdaughter, who was then twelve years old.

On September 6, 2007, Carroll and the Commonwealth's Attorney signed a plea agreement. In the document, Carroll stated that he was "going to plead guilty to the crime of

Rape," although he did not "admit that [he] committed the crime to which [he was] pleading guilty," because he had "decided it [was] in [his] interest to accept the prosecutor's offer to enter into this agreement." He also stated he understood that "by pleading guilty [he] may receive the same penalties as if [he] had been convicted of the same crime after a trial by a jury or by a judge sitting without a jury."

Also on September 6, 2007, the circuit court conducted a hearing on Carroll's guilty plea. The following colloquy ensued between the court and Carroll:

> THE COURT: Are you pleading guilty because you are, in fact, guilty and no other reason?
>
> THE DEFENDANT: Yes, sir.
>
> . . . .
>
> THE COURT: Tell me what an Alford plea is.
>
> . . . .
>
> THE DEFENDANT: Well, what the plea is, it says that the prosecutor feels he has enough evidence to convict me even though I don't think I'm guilty of the crime.
>
> THE COURT: And you don't want to take that chance.
>
> THE DEFENDANT: Correct.
>
> . . . .
>
> THE COURT: Okay. Now, do you . . . understand that the legal consequences of an Alford plea are the same as a guilty plea or a finding of guilt?

3

THE DEFENDANT:  That's what I am told [by my attorney]. . . . I know what I am doing.

.   .   .   .

THE COURT:  What is your plea?  Alford plea at this time?

THE DEFENDANT:  Yes, sir.

.   .   .   .

THE COURT:  Let the record reflect that the plea is made freely and voluntarily with an understanding of its nature and its consequences.

After a proffer by the prosecutor of what the evidence would have shown, the circuit court accepted Carroll's plea of guilty and convicted him of rape.  Pursuant to the plea agreement, the court suspended the imposition of sentence for five years, directed that Carroll be of general good behavior, have no contact with the victim or her family, and pay court costs.

The circuit court also placed Carroll on supervised probation during the period of suspension.  The court's sentencing order entered on September 20, 2007, provided that Carroll "shall comply with all the rules and requirements set by the Probation Officer" and that **"[p]robation shall include *any* substance abuse counseling, testing, and/or treatment as prescribed by the Probation Officer."**

4

The court informed Carroll that if, at the end of the suspension period, he had fulfilled "all these conditions, [he] can withdraw this plea [of guilty], enter a plea of guilty to assault and battery, and the Court will impose a fine of $750 in accordance with [the plea] agreement." The case was continued until September 14, 2012, for final disposition.

On October 5, 2007, Carroll filed a motion to amend the sentencing order to provide that "[n]o sex offender treatment be prescribed or required by the Probation Officer" because the "incident occurred over 20-something years ago," there have been "no allegations" against Carroll since, and "there is no need for any treatment." The circuit court did not grant the motion and ordered that "any sex offender treatment is to be determined by the Defendant's supervising Probation Officer."

On March 6, 2008, Carroll began attending a sex-offender treatment group to which he had been assigned by his probation officer for sex offender therapy. As part of this treatment program, Carroll was required to admit his guilt to the crime of rape with which he had been charged. He refused to make the admission or otherwise cooperate and, after the therapy staff had worked with him for two months, he was terminated from the program on May 7, 2008. The

prosecutor then moved for the revocation of Carroll's probation.

The circuit court held a hearing on the prosecutor's motion on June 13, 2008.  Opposing the motion, Carroll argued that the requirement that he admit his guilt would be "a breach of the plea agreement . . . [a]s part of an Alford plea."  The court found Carroll in violation of his probation and asked defense counsel "why [Carroll] should not go to jail?"  Counsel urged that Carroll be allowed to participate in individual sex offender therapy provided by Dr. Stanton E. Samenow, a psychologist who was not certified as a sex offender therapist.

The circuit court did not grant the request for individual sex offender therapy.  Instead, in an order entered June 17, 2008, the court vacated the sentence imposed and suspended in the September 20, 2007 order, sentenced Carroll to five years imprisonment, with the five years suspended for a period of five years upon the "special condition" that Carroll "enter & complete sex offender treatment as directed by his Probation Officer."

Carroll then filed a petition for appeal with the Court of Appeals containing a Statement of Questions Presented reading as follows:

6

1) Whether the trial court erred in finding Appellant in violation of probation based solely on Appellant's refusal to admit to rape during sex offender therapy given the fact that the Commonwealth agreed to and the court accepted an Alford plea?

2) Whether the trial court erred in not considering a reasonable alternative treatment modality (sex offender treatment with an expert forensic psychologist) in lieu of probation revocation coupled with the condition of successfully completing the same program from which appellant was terminated?

Carroll v. Commonwealth, 54 Va. App. 730, 737, 682 S.E.2d 92, 95 (2009).

## ANALYSIS

### Breach of Plea Agreement

Carroll argued the two questions quoted above and also argued that the revocation of his probation violated the terms of the plea agreement he signed with the Commonwealth. However, a majority of the Court of Appeals held that it could not "consider the plea agreement terms" because under "Rule 5A:12(c) '[o]nly questions presented in the petition for appeal will be noticed by the Court of Appeals' " and "[n]either question [presented in Carroll's petition] asks us to consider whether the trial court's decision finding that Carroll was in violation of his probation was a breach of the terms of the plea agreement." Carroll, 54 Va. App. at 737, 682 S.E.2d at 95-96.

7

Carroll argues here that he did ask the Court of Appeals in his Statement of the Questions Presented "to consider whether the trial court's decision finding that Appellant was in violation of his probation was a breach of the terms of the plea agreement."  Quoting the definition of an Alford plea in Black's Law Dictionary 83 (9th ed. 2009) as a "guilty plea that a defendant enters as part of a plea bargain, without actually admitting guilt," Carroll submits that "but for the plea bargain, manifested as a written plea agreement in this case, there is no Alford plea; they are not divisible in this case, and the elements of an Alford plea, paragraphs 5 and 15, are contained within the Plea Agreement."[1]

We disagree with this argument.  Obviously, there is some connection between the plea agreement and the Alford plea in this case, but Carroll failed to make the connection in his Statement of the Questions Presented.  Like the requirement in our Rule 5:17(c) for assignments of error, the purpose of questions presented in the Court of Appeals is to "point out the errors with reasonable certainty in order to direct [the] court and opposing counsel to the points on which appellant intends to ask a reversal of the

---

[1] In Paragraphs 5 and 15 of the plea agreement Carroll agrees to plead guilty but maintains his claim of innocence.

judgment, and to limit discussion to these points." Yeatts

v. Murray, 249 Va. 285, 290, 455 S.E.2d 18, 21 (1995)

(internal quotation marks omitted).  And like assignments of

error under this Court's Rule 5:17(c), it was the duty of

Carroll's counsel to "lay his finger on the error" in his

Statement of Questions Presented in the Court of Appeals.[2]

See First National Bank of Richmond v. William R. Trigg Co.,

106 Va. 327, 342, 56 S.E. 158, 163 (1907) (internal

quotation marks omitted).

Carroll's questions presented fail to conform to these

requirements.  Neither the words "breach" and "plea

agreement" nor any synonyms appear anywhere in the statement

and are not connected in a way that would inform the Court

of Appeals and the Commonwealth "with reasonable certainty"

that Carroll intended to ask for a reversal of the judgment

against him on the ground that the revocation of his

probation was a breach of the plea agreement.  In short,

Carroll's counsel simply failed to "lay his finger on the

error" in his Statement of the Questions Presented.

Accordingly, we will not give further consideration to

---

[2] Effective July 1, 2010, the rules of the Court of Appeals were changed to require assignments of error rather than questions presented.

9

Carroll's argument concerning a breach of the plea agreement.[3]

## Refusal to Admit Guilt

This brings us to Carroll's argument that the Court of Appeals erred in "affirming the trial court's revocation of [his] probation because [he] refused to accept responsibility in sex-offender treatment by admitting to rape based upon his Alford plea as a matter of law." Carroll contends that the "probation of one who has entered an Alford plea cannot be revoked for refusing to admit to the offense, thereby accepting responsibility for the offense, after entering the plea" and that this "is particularly the case when the trial court does not warn the defendant prior to or at the time of entering the plea that he/she will be required to admit to the offense at a later time, such as, in treatment."[4]

_____

[3] Carroll requests that we invoke the "ends of justice" exception of Rule 5:25 and consider the plea agreement question if we hold he did not preserve the point in the Court of Appeals. The application of the exception is justified only when failure to do so "would result in a grave injustice." Gheorghiu v. Commonwealth, 280 Va. 678, 689, 701 S.E.2d 407, 413 (2010) (this day decided); see also Charles v. Commonwealth, 270 Va. 14, 17, 613 S.E.2d 432, 433 (2005). Upon the record before us in this case, we cannot say that if the exception is not applied "a grave injustice" would result.

[4] In its opinion, the Court of Appeals expressed Carroll's argument in much more succinct terms than he expresses it. The court wrote that "[a]t its core,

Carroll cites our decision in <u>Parson v. Carroll</u>, quoted previously herein, which involved a defamation action brought by Thomas Parson against Robert Carroll. 272 Va. at 562, 636 S.E.2d at 452. Parson had entered an <u>Alford</u> plea to six counts of sexual battery with Carroll as the victim and then filed a defamation action against Carroll for telling others what Parson had done to him. <u>Id.</u> at 562, 636 S.E.2d at 453. The trial court granted Carroll's motion for summary judgment, holding that the doctrine of judicial estoppel barred the defamation action. This Court reversed, holding that when Parson entered his <u>Alford</u> plea, he "conceded only that the evidence was sufficient to convict him of the offenses and did not admit as a factual matter that he had participated in the acts constituting the crimes," and this "concession of law did not provide a basis for applying judicial estoppel." <u>Id.</u> at 566, 636 S.E.2d at 455. Further, "[b]ecause the material facts of Parson's motion for judgment were still in dispute at this stage of the proceedings, the circuit court further erred in awarding Carroll summary judgment." <u>Id.</u>

Carroll's argument is that an <u>Alford</u> plea, by its nature, contains an implicit promise that the defendant will never be required to admit his guilt." 54 Va. App. at 743, 682 S.E.2d at 98.

Parson is not controlling.  In Parson, a civil case, this Court decided that a concession made in an Alford plea is a concession of law and not of fact and is not a bar to a post-Alford proceeding in which the issue is whether, as a matter of fact, the accused participated in the acts constituting the offense.  Here, the Commonwealth has not claimed that Carroll's concession in his Alford plea should be treated as an admission of factual guilt.  Rather, the Commonwealth correctly points out that Parson "did not discuss or hold anything with respect to the effect an 'Alford plea' has in a criminal case or that it guarantees a defendant special rights with respect to probation conditions."  The important point to be made here is that nothing in the Alford opinion, the Parson opinion, or any other Virginia opinion indicates that an Alford plea is a bar to a post-Alford proceeding in which a sex offender is required to admit his guilt during treatment.

Carroll cites two decisions from other jurisdictions in support of his position.  In State v. Birchler, 2000 Ohio App. LEXIS 4622, at *8 (Ohio Ct. App. 2000) (unpublished), the court reversed the judgment revoking the defendant's probation because he was not given notice when he offered his Alford plea that he would be required to admit he had a victim in order to complete his probation.  In People v.

12

*Walters*, 627 N.Y.S.2d 289, 290-91 (N.Y. Cnty. Ct. 1995), the judgment revoking the defendant's probation was reversed because he was not informed when he entered his *Alford* plea that he would be required to admit his guilt to the underlying crime during therapy.  Later, however, the Court of Appeals of New York held directly opposite to *Walters*. *Silmon v. Travis*, 741 N.E.2d 501, 504 (N.Y. 2000).

In addition to this decision of the Court of Appeals of New York, the decisions of one United States Court of Appeals and the highest courts of three other states support the Commonwealth's position.  See *Warren v. Richland Cnty. Cir. Ct.*, 223 F.3d 454 (7th Cir. 2000); *People v. Birdsong*, 958 P.2d 1124 (Colo. 1998); *State v. Faraday*, 842 A.2d 567 (Conn. 2004); *State ex rel. Warren v. Schwarz*, 579 N.W.2d 698 (Wis. 1998).  We will follow their lead.

The two *Warren* cases, involving the same defendant, are of special interest.  In the case decided by the Supreme Court of Wisconsin, Philip I. Warren was charged with the sexual assault of a child.  He entered an *Alford* plea, was placed on probation, participated in sex offender treatment, refused to admit his guilt, and had his probation revoked. He argued that the revocation of his probation because he refused to admit his guilt violated his right to due

13

process.  In response, the Supreme Court of Wisconsin held

as follows:

> [W]hen the State required Warren to admit to the sexual
> assault in this case, it did not act inconsistently
> with the 'bargain' it had made to 'induce' his guilty
> plea.  A defendant's protestations of innocence under
> an Alford plea extend only to the plea itself.
>
> A defendant may choose to enter an Alford plea for
> various reasons.  He may wish to take advantage of the
> state's offer for a reduced sentence.  He may wish to
> spare himself or his family of the expense and
> embarrassment of a trial.  Whatever the reason for
> entering an Alford plea, the fact remains that when a
> defendant enters such a plea, he becomes a convicted
> sex offender and is treated no differently than he
> would be had he gone to trial and been convicted by a
> jury.
>
> . . . .
>
> [W]e hold that the revocation of Warren's probation for
> failure to admit his guilt after acceptance of his
> Alford plea did not violate his right to due process.

579 N.W.2d at 706-07.

Warren then filed a petition for habeas corpus in

federal court challenging the revocation his probation.  In

rejecting the challenge, the Seventh Circuit Court of

Appeals stated as follows:

> Warren believes that the acceptance of an Alford plea
> is an assurance that a defendant will not have to admit
> guilt during either conviction or punishment.  He is
> wrong.  He can maintain his innocence at the drug
> store, the grocery store and any other public place he
> desires.  But, when in the private setting of sex
> offender counseling that is ordered as a condition of
> probation, and his admission is necessary for
> rehabilitation, he must admit responsibility for his
> conduct.

14

223 F.3d at 459.

Carroll attempts to distinguish the decision of the Supreme Court of Wisconsin on the ground that before the trial court accepted the Alford plea it advised Warren that if he was placed on probation he would "very likely . . . be ordered" to undergo counseling and he would "have an obligation to enter into counseling in good faith with the counselor, the psychiatrist, or doctor." Warren, 579 N.W.2d at 703. In his case, Carroll says, he "had no warnings that his refusal to admit to a rape would be cause for his probation to be revoked."

However, the "good faith" statement by the trial court in Warren falls far short of a "warning that [a defendant's] refusal to admit to a rape would be cause for his probation to be revoked," so that part of Warren provides Carroll little comfort. Indeed, Warren himself did not consider it sufficient. He argued separately that the circuit court's failure to inform him at the time of his Alford plea that he would be required to admit his guilt during treatment rendered the plea unknowing and involuntary. The Supreme Court of Wisconsin responded as follows:

> [I]t is well-established that in informing defendants of their rights, courts are only required to notify them of the 'direct consequences' of their pleas. Defendants do not have a due process right to be

15

informed of consequences that are merely collateral to their pleas.

. . . .

[W]e conclude that the circuit court was not required to inform Warren that his probation could be revoked for failing to take responsibility for his actions because it was only a collateral consequence of his conviction.

579 N.W.2d at 708-09 (citations omitted).

We hold that the record in this case fully supports the conclusion that Carroll violated the terms of his probation by refusing to admit his guilt during sex offender treatment. We hold further that Carroll's failure to receive warning at the time he entered his Alford plea that such a refusal could result in the revocation of his probation is a collateral and not a direct consequence of his plea and does not render the revocation improper.

Alternative Treatment

Citing Peyton v. Commonwealth, 268 Va. 503, 604 S.E.2d 17 (2004), Carroll argues that "[u]nder the circumstances of this case, the revocation of [his] probation in lieu of an alternative treatment modality, and then the requirement for successful completion of the same program, are unreasonable and are not an appropriate exercise of conscientious judgment by the trial court." In Peyton, the defendant was convicted of a drug offense, given a suspended sentence, and placed on probation conditioned upon his entry into and

16

successful completion of his participation in the Detention Center Incarceration Program pursuant to Code § 19.2-316.2. Id. at 506, 604 S.E.2d at 18.

When Peyton was within one month of completing his participation in the program, he became ill, was hospitalized, and was removed from the program for "medical/psychological reasons." Id. at 507, 604 S.E.2d at 18. The trial court held a show cause hearing, revoked the suspended sentence, and ordered Peyton to serve the original sentence. The trial judge stated he did not question the "sincerity" of Peyton's desire to complete the program, but said there was not "anything I can do." Id.

The Court of Appeals affirmed the trial court's judgment, and this Court reversed the judgment of the Court of Appeals. We held that the circuit court abused its discretion in revoking the suspended sentence, and we stated as follows:

> There is surely a distinction between the willful failure of an inmate to comply with the requirements of the detention center program and the conditions of his suspended sentence permitting his participation in that program and the subsequent inability of the inmate to do so resulting from an unforeseen medical condition.

268 Va. at 511, 604 S.E.2d at 21.

Carroll can hardly equate himself with Peyton or his situation with Peyton's. Carroll did not refuse to admit

17

his guilt during sex offender treatment because of some inability resulting from an unforeseen condition that arose. Rather, his refusal was an out-and-out "willful failure . . . to comply with the requirements" of his probation officer.  Id.

The "revocation of a suspended sentence lies in the discretion of the trial court and . . . this discretion is quite broad," but "[t]he cause deemed . . . sufficient for revoking a suspension must be a reasonable cause."  Hamilton v. Commonwealth, 217 Va. 325, 326-27, 228 S.E.2d 555, 556 (1976) (citations and internal quotation marks omitted). The same discretion applied when the circuit court was called upon here to decide whether Carroll should be allowed to receive alternative treatment and what penalty should be imposed for his earlier failure to successfully complete sex offender treatment.

We certainly cannot say that the circuit court abused its discretion or acted unreasonably in refusing to allow Carroll to be treated in some unsupervised situation by someone not versed in the treatment of sex offenders.  Nor can we say that the circuit court abused its discretion or acted unreasonably in ordering Carroll to participate in the same program he was discharged from earlier.  The circuit court merely gave Carroll a second chance to avoid

18

imprisonment, which is one of the reasons a defendant enters an <u>Alford</u> plea in the first place.

CONCLUSION

For the reasons assigned, we will affirm the judgment of the Court of Appeals.

<u>Affirmed</u>.

19