COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, Athey and Callins

UNPUBLISHED

JEREMY WAYNE LUCK

MEMORANDUM OPINION\*
v.      Record No. 0534-22-3                                   PER CURIAM
FEBRUARY 21, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Bruce D. Albertson, Judge

(David L. Parker; David L. Parker, P.C., on brief), for appellant.
Appellant submitting on brief.

(Jason S. Miyares, Attorney General; Ken J. Baldassari, Assistant
Attorney General, on brief), for appellee.


Jeremy Wayne Luck ("Luck") appeals the order from the Circuit Court of Rockingham

County ("trial court") revoking the remaining seven years of his previously suspended sentence.

Luck argues that the trial court abused its discretion by "revoking an amount of time that vastly

exceeded the recommended sentence." After examining the briefs and record in this case, the

panel unanimously holds that oral argument is unnecessary because "the appeal is wholly without

merit." Code § 17.1-403(ii)(a); Rule 5A:27(a). We affirm the judgment of the trial court.

I. BACKGROUND

In December 2019, Luck entered an *Alford*[1] plea to attempted malicious wounding of a

law enforcement officer under an agreed disposition with the Commonwealth. Consistent with

---

\* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] "An individual accused of crime may voluntarily, knowingly, and understandingly
consent to the imposition of a prison sentence even if he is unwilling or unable to admit his
participation in the acts constituting the crime." *North Carolina v. Alford*, 400 U.S. 25, 37

the terms of the agreed disposition, the trial court sentenced Luck to eight years and six months' imprisonment, with seven of those years suspended, conditioned upon the successful completion of two years of supervised probation.

Luck was released from incarceration on January 13, 2021. He resided with his father in New Kent County and complied with probation by reporting as directed and maintaining employment. However, on July 17, 2021, Luck was arrested in New Kent County on two counts of domestic assault and two counts of destruction of property arising out of an altercation with his father. While incarcerated, Luck was charged with an additional ten counts of violating a protective order. Subsequently, on October 6, 2021, the New Kent County Juvenile and Domestic Relations District Court convicted Luck on one count of domestic assault, one count of destruction of property, and two counts of violating a protective order; the remaining charges being *nolle prossed*. Luck was sentenced to a total of forty-eight months in jail, with thirty-six months suspended, conditioned upon one year of supervised probation.

Following Luck's new convictions, his probation officer filed a major violation report documenting the new convictions and requesting a show cause order. The trial court issued a capias for his arrest, and, after several continuances, held a revocation hearing at which Luck stipulated that he had violated the conditions of his suspended sentence. The trial court then found Luck in violation of the terms of his suspended sentence.

While addressing the question of an appropriate sentence, the Commonwealth presented evidence including copies of Luck's conviction orders from New Kent County, his criminal history which included a conviction for attempted malicious wounding of a law enforcement

---

(1970). *Alford* pleas allow "criminal defendants who wish to avoid the consequences of a trial to plead guilty by conceding that the evidence is sufficient to convict them, while maintaining that they did not participate in the acts constituting the crimes." *Carroll v. Commonwealth*, 280 Va. 641, 644-45 (2010) (quoting *Parson v. Carroll*, 272 Va. 560, 565 (2006)).

officer, and other previous convictions for credit card fraud, driving under the influence, revocation of a suspended driver's license, unauthorized use of a motor vehicle, assault, and contempt of court.

Luck testified that he had complied with probation upon his release from prison in January 2021, was employed, had no positive drug screens, and had been living with his sixty-five-year-old father. Luck acknowledged that he had disagreements over his father's girlfriend, who used heroin and crack cocaine, and expressed concern about the girlfriend using drugs in the house because it violated his probation. He further testified that after learning that his father's girlfriend was pregnant, he reiterated his concern to his father about her drug use and how a possible overdose would "look bad" for him. The two counts of domestic assault and two counts of destruction of property arose out of an incident on July 16, 2021, in which Luck and his father started arguing and "shoving" each other. During the altercation, Luck "knocked the tv off the dresser," and "it broke." Luck's father then called the police, who arrested Luck. Luck explained that he had then violated the protective order against his father when Luck called his father from jail and asked him to retrieve phone numbers from Luck's cell phone. Luck also testified that upon his release from jail, he did not intend to return to his father's house, but instead, intended to obtain employment at George's Chicken and reside in Rockingham County. Finally, Luck apologized to the court for his actions.

The Commonwealth argued for the trial court to deviate upward from the sentencing guidelines. The guidelines recommended an active sentence up to six months in jail, but the Commonwealth argued that because Luck was on probation for a "very serious and dangerous crime" and had a "history of violence" that the guidelines were "woefully inadequate."

Luck argued that the guidelines were "adequate" and asked to be sentenced within them because he had been doing well on probation and he and his father had only been involved in "a

scuffle" where "nobody was really hurt." He also claimed that his violations of the protective order arose from telephone calls from the jail to his father, not any physical confrontation or interaction. Finally, Luck promised to "finish out his probation [in Rockingham County] peacefully and do well."

After considering the evidence and argument, the trial court determined that Luck had violated the terms of his suspended sentence and had a "violent history." The trial court found that he violated his probation and that due to his "violent history" and the sentences entered for the assault and battery against Luck's father, that the incident was "not just a push." The court then revoked the balance of the previously suspended sentence and released him from further probation.[2] Luck appealed.

## II. ANALYSIS

### A. *Standard of Review*

"On an appeal of a probation revocation, the trial court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" *Heart v. Commonwealth*, 75 Va. App. 453, 460 (2022) (quoting *Green v. Commonwealth*, 75 Va. App. 69, 76 (2022)). "The evidence is considered in the light most favorable to the Commonwealth, as the prevailing party below." *Jacobs v. Commonwealth*, 61 Va. App. 529, 535 (2013).

### B. *The trial court did not err in revoking Luck's suspended sentence.*

Luck argues that the trial court abused its discretion by "vastly exceed[ing]" the sentencing guidelines and revoking his entire suspended sentence for a first probation violation based on misdemeanor convictions. Luck asserts that the trial court "arbitrarily decided" that the guidelines were not appropriate. He further contends that the sentence was "too harsh" considering the circumstances. We disagree.

---

[2] The trial court denied Luck's *pro se* motion for reconsideration.

After suspending a sentence, a trial court "may revoke the suspension of sentence for any cause the court deems sufficient that occurred at any time within the probation period, or within the period of suspension fixed by the court." Code § 19.2-306(A). "If the court, after hearing, finds good cause to believe that the defendant has violated the terms of suspension, then the court may revoke the suspension and impose a sentence in accordance with the provisions of § 19.2-306.1." Code § 19.2-306(C). If the basis of the violation is that "the defendant was convicted of a criminal offense that was committed after the date of the suspension," the trial court "may revoke the suspension and impose or resuspend any or all of that period previously suspended."[3] Code § 19.2-306.1(B).

The record demonstrates, and Luck acknowledged, that he had incurred new criminal convictions during the suspension period; therefore, the trial court had sufficient cause to revoke his suspended sentence. *See Booker v. Commonwealth*, 61 Va. App. 323, 338 (2012) ("A new conviction certainly constitutes good cause to revoke the suspension of a previously imposed sentence."). It was equally within the trial court's purview to weigh any mitigating factors Luck presented, such as his continuous employment, lack of drug use, cooperation with his probation officer, acceptance of responsibility for his actions, and lack of prior probation violations. *See Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000).

"The statutes dealing with probation and suspension are remedial and intended to give the trial court valuable tools to help rehabilitate an offender through the use of probation, suspension of all or part of a sentence, and/or restitution payments." *Howell v. Commonwealth*, 274 Va. 737, 740

---

[3] The General Assembly amended Code § 19.2-306(C) and codified Code § 19.2-306.1 effective July 1, 2021. 2021 Va. Acts Spec. Sess. I ch. 538. Those amendments apply because Luck violated his probation after July 1, 2021, and the revocation proceedings began after July 1, 2021. *Green*, 75 Va. App. at 84 n.4. The parties agree that Luck was convicted of new criminal offenses that he committed after the date of his suspension. Accordingly, Code § 19.2-306.1 permitted the trial court to impose up to the entirety of Luck's suspended sentence.

(2007). While on probation, Luck was convicted of multiple misdemeanor offenses arising from an altercation with his sixty-five-year-old father. Luck's disregard of the terms of his suspended sentence supports a finding that he was not amenable to rehabilitation. "When coupled with a suspended sentence, probation represents 'an act of grace on the part of the Commonwealth to one who has been convicted and sentenced to a term of confinement.'" *Hunter v. Commonwealth*, 56 Va. App. 582, 587 (2010) (quoting *Price v. Commonwealth*, 51 Va. App. 443, 448 (2008)). Luck failed to make productive use of the period of grace that had been extended to him and continued to engage in criminal conduct during the suspension period.

Further, the probation violation guidelines, like the standard sentencing guidelines, "are not binding on the trial judge; rather, the guidelines are merely a 'tool' to assist the judge in fixing an appropriate punishment." *Belcher v. Commonwealth*, 17 Va. App. 44, 45 (1993). The discretionary guidelines recommended an active sentence up to six months in jail. During the revocation hearing, the trial court found the guidelines "absolutely inappropriate" considering Luck's "violent history" and the circumstances of his recent convictions. The trial court explained in writing that it deviated from the guidelines because Luck was a "[v]ery violent person." The trial court noted that Luck's criminal history included convictions for attempted malicious assault of a law enforcement officer and a prior domestic assault and battery in addition to the most recent assault of his father. The trial court recited Luck's other criminal convictions for assault, "dangerous DUIs," fraud, and contempt. The trial court found that the guidelines did not "take into account this history or the underlying charge." Considering the facts and circumstances of this case, we find that the trial court did not abuse its discretion in revoking Luck's suspended sentence.

### III. CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed*.