UNPUBLISHED

*VIRGINIA:*

*In the Court of Appeals of Virginia on* **Tuesday** *the* **10th** *day of* **October, 2023**.

Steve Wayne Shifflett,                                                                                            Appellant,

 against                    Record No. 0675-22-2
                           Circuit Court No. CR19000342-01

Commonwealth of Virginia,                                                                              Appellee.

Upon a Petition for Rehearing En Banc

Before the Full Court

On September 22, 2023 came the appellee, by the Attorney General of Virginia, and filed a petition requesting that the Court set aside the judgment rendered herein on September 12, 2023, and grant a rehearing *en banc* on the issue(s) raised in the petition.

On consideration whereof and pursuant to Rule 5A:35 of the Rules of the Supreme Court of Virginia, the petition for rehearing *en banc* is granted and the appeal of those issues is reinstated on the docket of this Court. The mandate previously entered herein is stayed pending the decision of the Court *en banc*.

The parties shall file briefs in compliance with the schedule set forth in Rule 5A:35(b). An electronic version of each brief shall be filed with the Court and served on opposing counsel.[1]

A Copy,

Teste:

A. John Vollino, Clerk

                    *original order signed by a deputy clerk of the*
By:          *Court of Appeals of Virginia at the direction*
                    *of the Court*

Deputy Clerk

---

[1] The guidelines for filing electronic briefs and appendices can be found at www.courts.state.va.us/online/vaces/resources/guidelines.pdf.

Present:    Judges Ortiz, Chaney and Senior Judge Haley
Argued by videoconference

STEVE WAYNE SHIFFLETT

v.        Record No. 0675-22-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE JAMES W. HALEY, JR.
SEPTEMBER 12, 2023

FROM THE CIRCUIT COURT OF BUCKINGHAM COUNTY
J. Leyburn Mosby, Jr., Judge Designate

Kevin E. Calhoun (Charles C. Cosby, Jr., on brief), for appellant.

Matthew J. Beyrau, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Steve Wayne Shifflett appeals the circuit court's judgment revoking his previously

suspended sentence and imposing three months' active incarceration.  Shifflett contends that his

sentence violated Code § 19.2-306.1(C)'s prohibition on active incarceration for a "first technical

violation."  In this case, we consider whether Shifflett's failure to complete a sex offender treatment

program and 200 hours of community service at a location approved by his probation officer were

failures to "follow the instructions of the probation officer," which Code § 19.2-306.1(A)(v) defines

as a technical violation.  For the following reasons, we conclude that Shifflett committed only a first

technical violation, reverse the circuit court's judgment, and remand for further proceedings.

BACKGROUND

On July 13, 2020, the circuit court convicted Shifflett of aggravated sexual battery and,

on October 7, 2020, sentenced him to twenty years' incarceration.  The court suspended the

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

sentence conditioned on the successful completion of two years' supervised probation. The court ordered Shifflett to "follow all the rules and regulations of probation," "comply with all the rules and requirements set by the Probation Officer," "complete any screening, assessment, testing, treatment and/or education as directed by the probation officer," and "comply with a plan of 200 hours of community service coordinated through adult probation that shall all be completed by October 7, 2021." Additionally, the court required Shifflett to "register and reregister with the Sex Offender and Crimes Against Minors Registry" and to "immediately enroll in counseling" with "a licensed sex offender provider/counselor."

On October 9, 2020, Shifflett began supervised probation and signed a document agreeing to follow a general set of conditions of supervised probation, which included following his probation officer's instructions and being "truthful [and] cooperative." Additionally, Shifflett signed a set of "Sex Offender Special Instructions" that required him to "[a]ttend and successfully complete a Sex Offender Treatment Program approved by [his] supervising officer."

On November 30, 2021, Shifflett's probation officer, Rebecca Moss, reported that he had violated Condition 6 of the general conditions of probation by being "rude" and uncooperative during office appointments in November 2020 and April 2021. Shifflett also "began Sex Offender Treatment through the . . . Probation and Parole Office" in December 2020 but was "unsuccessfully discharged" about a year later due to his "lack of progress and therapy[-]interfering behavior," including Shifflett's refusal to accept "accountability" for his offense. In addition, Moss reported that she had instructed Shifflett to "secure a community service site" and obtain her permission to perform community service there before doing so. She later authorized Shifflett to perform community service at a fire department, where he completed 44 hours of community service by July 3, 2021. Shifflett also completed 161 hours of community service at a church in February 2021, but Moss "could not accept" those hours

because Shifflett did not get her permission to perform community service at the church. Moss discussed Shifflett's community service with Fire Chief Marcus, who supervised the 44 hours of approved community service Shifflett performed at the fire station. Chief Marcus confirmed that Shifflett had performed an additional 161 hours at a local church at his direction but did not provide the name of the church. Accordingly, Moss reported that Shifflett had "failed to complete his 200 hours of community service" by October 7, 2021. The circuit court issued a capias on December 7, 2021; Shifflett was arrested on December 18, 2021.

At the revocation hearing, the parties consented to applying recently amended and reenacted Code § 19.2-306(C) and newly enacted Code § 19.2-306.1 to the proceedings.[1] Shifflett conceded that he had violated the terms of his probation as Moss had reported but argued that the circuit court could not impose an active sentence. He maintained that his violations were "technical violations" under Code § 19.2-306.1(A) and the circuit court could not impose active incarceration for a "first technical violation" under Code § 19.2-306.1(C). The Commonwealth countered that Shifflett's failure to complete sex offender treatment and 200

---

[1] Amended and reenacted Code § 19.2-306(C) and newly enacted Code § 19.2-306.1, which took effect on July 1, 2021, do "not apply at a violation hearing when a probationer committed the relevant violations before the change in law and when revocation proceedings began before the statute took effect—absent agreement of the parties otherwise." *Delaune v. Commonwealth*, 76 Va. App. 372, 378 (2023) (citing *Green v. Commonwealth*, 75 Va. App. 69, 83 (2022)); *see* 2021 Va. Acts Spec. Sess. I ch. 538. The Commonwealth argues on brief that the new statutory framework did not apply to Shifflett's revocation hearing because some of his violation conduct preceded the statutes' effective date and the parties did not agree to apply the new laws. But at oral argument, the Commonwealth acknowledged that this Court has held that parties consented to applying the new laws to revocation proceedings where, as here, "the probation officer prepared guidelines relying on the [new statutory] framework" and the Commonwealth did not assert that the defendant's argument based on Code § 19.2-306.1 was "irrelevant or object to the use of Code § 19.2-306.1." *Heart v. Commonwealth*, 75 Va. App. 453, 463-64 (2022); *see also Delaune*, 76 Va. App. at 378 (same). (Oral argument at 11:50-14:45). We find that *Heart* and *Delaune* are controlling and that the parties consented to applying the new statutory framework at the revocation proceeding.

hours of community service at an approved location were "special condition" violations, allowing the circuit court to revoke Shifflett's entire sentence.[2]

The circuit court found that Shifflett had failed "to follow special conditions/instructions . . . to complete 200 hours of community service and complete sex offender treatment." The court emphasized that Shifflett was "disruptive with the probation officer" and "failed to follow his probation officer's regulations and instructions." Additionally, the court found that Shifflett's failure to complete community service hours at an approved location was the "minor part of [the] violation"[3] and the "major part" was Shifflett's "attitude" and failure to "cooperat[e] with [his] probation officer." Accordingly, the court revoked ten years of Shifflett's previously suspended sentence and resuspended nine years and nine months. Shifflett appeals.

ANALYSIS

"On appeal, '[w]e "view the evidence received at [a] revocation hearing in the light most favorable to the Commonwealth, as the prevailing party, including all reasonable and legitimate inferences that may properly be drawn from it."'" *Green v. Commonwealth*, 75 Va. App. 69, 76 (2022) (alterations in original) (quoting *Johnson v. Commonwealth*, 296 Va. 266, 274 (2018)). "[T]he trial court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" *Heart v. Commonwealth*, 75 Va. App. 453, 460 (2022) (quoting *Green*, 75 Va. App. at 76). "But 'an issue of statutory interpretation is a pure question of law which we review de novo.'" *Id.* (quoting *Green*, 75 Va. App. at 76).

---

[2] At the revocation hearing, the Commonwealth conceded that Shifflett's failure to complete the community service hours at a location approved by his probation officer was a failure to follow the probation officer's instructions. Nevertheless, the Commonwealth maintained that Shifflett's conduct was a "special condition" violation.

[3] The circuit court suggested Shifflett consult his probation officer after the revocation hearing to request that she retroactively approve the community service hours he had already completed. The court stated that if the probation officer refused the request, then Shifflett would "have to finish up" the balance of his community service hours.

"[W]hen construing a statute, our primary objective is 'to ascertain and give effect to legislative intent,' as expressed by the language used in the statute." *Diaz-Urrutia v. Commonwealth*, 77 Va. App. 182, 190 (2023) (quoting *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012)). "When the language of a statute is unambiguous, we are bound by the plain meaning of that language." *Heart*, 75 Va. App. at 466 (quoting *Cuccinelli*, 283 Va. at 425).

Code § 19.2-306(C) provides that "[i]f the court, after hearing, finds good cause to believe that the defendant has violated the terms of suspension, then the court may revoke the suspension and impose a sentence in accordance with the provisions of § 19.2-306.1." Code § 19.2-306.1 "creates two tiers of probation violations: (1) technical violations, based on a probationer's failure to do one of ten enumerated actions, and (2) non-technical violations." *Heart*, 75 Va. App. at 466.

The statute "contains specific limitations on sentencing that apply when a circuit court bases its revocation of a suspended sentence on what the statute refers to as certain 'technical violations' enumerated in the statute." *Green*, 75 Va. App. at 75 (citing Code § 19.2-306.1). For a "first technical violation," a court "shall not impose a sentence of a term of active incarceration." *Henthorne v. Commonwealth*, 76 Va. App. 60, 65 (2022) (quoting Code § 19.2-306.1(C)). "Multiple technical violations arising from a single course of conduct or a single incident or considered at the same revocation hearing shall not be considered separate technical violations for the purposes of sentencing pursuant to this section." Code § 19.2-306.1(A). But the sentencing limitations do not apply to non-technical violations, which include "convict[ion] of a criminal offense that was committed after the date of the suspension" and "violat[ion of] another condition other than (i) a technical violation [in subsection (A)] or (ii) a good conduct violation that did not result in a criminal conviction." *Thomas v.*

*Commonwealth*, 77 Va. App. 613, 622 (2023) (alterations in original) (quoting Code § 19.2-306.1(B)).

Shifflett contends that his failure to complete sex offender treatment and 200 hours of community service at an approved location were "technical violations." He asserts that the circuit court ordered him to "immediately enroll in counseling" with "a licensed sex offender provider/counselor" but delegated "authority and/or discretion to the probation officer" to determine whether he was required to complete a sex offender treatment program. Therefore, he maintains that he complied with the circuit court's directive to *enroll* in sex offender counseling but "failed to follow" the probation officer's instructions to *complete* a sex offender treatment program. Similarly, Shifflett argues that the circuit court required him to comply with his probation officer's plan to complete 200 hours of community service by October 7, 2021. He contends that he completed the required number of community service hours before the October 2021 deadline, but did not do so at a location approved by his probation officer. Accordingly, Shifflett asserts that each violation amounted to a failure to follow his probation officer's instructions, which Code § 19.2-306.1(A)(v) defines as a "technical violation."

Code § 19.2-306.1(A) enumerates ten probation violations that are "technical violation[s]." Relevant here, a probationer's failure to "follow the instructions of the probation officer, be truthful and cooperative, and report as instructed" is a technical violation. Code § 19.2-306.1(A)(v). "Because the General Assembly specifically defined 'technical violation' to include any 'violation *based on*' specified conduct," determining whether a violation is technical in nature requires us to consider whether "the violation conduct matches the conduct listed in Code § 19.2-306.1(A)." *Delaune v. Commonwealth*, 76 Va. App. 372, 382-83 (2023). To be sure, "[t]he statute focuses on the *underlying violation conduct itself*, not the particular language or label a trial court may have used in imposing a condition of probation." *Id.* at 383 (emphasis

- 6 -

added).  Accordingly, if the underlying violation conduct "matches" the conduct listed in Code § 19.2-306.1(A), the violation is technical in nature.  *Id.*

In addition, it is well-established that a sentencing court may "impose specific, reasonable conditions of suspension and probation tailored to each individual and situation." *Thomas*, 77 Va. App. at 621 n.5 (citing *Murry v. Commonwealth*, 288 Va. 117, 122 (2014)); *see* Code § 19.2-303 (permitting sentencing courts to "place the defendant on probation under such conditions as the court shall determine").  "[U]nless a statute specifically imposes on the circuit court the duty to set the parameters of [a probation] condition . . . , the circuit court may set the bounds of the condition and delegate to the probation office the duty to set the parameters of those conditions." *Fazili v. Commonwealth*, 71 Va. App. 239, 254 (2019).  "Essentially, while the circuit court sets the terms and conditions of probation, probation officers *enforce* those terms and conditions and exercise discretion in doing so." *Id.* at 255 (emphasis added). Accordingly, we have held that where a sentencing order required the defendant to "have no use of any device that can access internet *unless approved by his Probation Officer,*" the circuit court properly "delegat[ed] to the probation officer the authority *to supervise* [the defendant's] internet usage." *Id.* at 246-55 (emphases added).

"While 'special condition' is not defined by statute, violations of special conditions [imposed by a court] are 'non-technical' by nature since they condition behavior" not enumerated in Code § 19.2-306.1(A). *Burford v. Commonwealth*, 78 Va. App. 170, 183 (2023). "To be classified as special conditions, the behaviors must be distinct from the conditions included in Code § 19.2-306.1(A) and courts cannot evade the limiting sentencing scheme for technical violations by 'crafting "special conditions" that encompass conduct defined by the statute as a "technical violation."'" *Id.* (quoting *Thomas*, 77 Va. App. at 625).  Indeed, if a probationer violates a "special condition" requiring him "to do something that [i]s covered by the

enumerated list of technical violations [in Code § 19.2-306.1(A)]," the violation is "a technical violation, not a special condition" violation because it is based on conduct matching that which Code § 19.2-306.1(A) expressly defines as technical in nature. *Diaz-Urrutia*, 77 Va. App. at 191 (citing *Delaune*, 76 Va. App. at 383). In that circumstance, the "defendant has committed a technical violation" and Code § 19.2-306.1(C)'s sentencing limitations apply. *Id.* at 194. Conversely, if the violation conduct does not "match" that listed in Code § 19.2-306.1(A) but matches conduct covered by a "special condition" imposed by the sentencing court, then it is a non-technical violation not subject to any sentencing limitations. *Burford*, 78 Va. App. at 182-83.

In *Delaune* we held that a probationer's drug use constituted a technical violation because it was a failure to "refrain from the use, possession, or distribution of controlled substances" under Code § 19.2-306.1(A)(vii), albeit the sentencing court required the probationer to remain "drug free" as a "special condition" of her suspended sentence. 76 Va. App. at 383. We noted that the "drug free" condition required the probationer to do no more than refrain from conduct expressly defined as a technical violation under Code § 19.2-306.1(A)(vii) and, therefore, her violation of that condition was a technical violation. *Id.*

By contrast, in *Thomas* we held that a defendant's alcohol use violated a "special condition" requiring him to abstain from drinking "*any alcohol*" and his conduct did not constitute a technical violation because Code § 19.2-306.1(A)(vi) "defines using alcohol as a technical violation *only* 'to the extent that it disrupts or interferes with' the probationer's 'employment or orderly conduct.'" *Thomas*, 77 Va. App. at 625-26. Accordingly, the defendant's "violation of his probation based on his alcohol consumption [wa]s not a technical violation under subsection (A)(vi)" because the sentencing order's alcohol condition was more restrictive than Code § 19.2-306.1(A)(vi). *Id.* at 626.

- 8 -

Most recently in *Burford*, we considered whether a defendant violated a "special condition" or committed a technical violation by failing to complete a recommended psychosexual evaluation. 78 Va. App. at 181-84. There, the sentencing order required the defendant to "complete a [community-based probation] mental health evaluation" and to "follow all recommendations." *Id.* at 180. After the defendant completed the mental health evaluation as directed, *someone other than his probation officer* "determined that he [also] needed to complete a psychosexual evaluation." *Id.* at 176 (alteration in original). The probation officer then instructed the defendant to follow the recommendation to complete a psychosexual evaluation, and he refused. *Id.* at 176-77.

On appeal, Burford argued that his failure to complete the recommended psychosexual evaluation amounted to a failure to follow his probation officer's instruction under Code § 19.2-306.1(A)(v). *Id.* at 181-82. We disagreed, holding that the defendant violated a special condition and, therefore, committed a non-technical violation, by refusing to complete the recommended psychosexual evaluation because the sentencing order explicitly required him to complete a mental health evaluation and "follow all recommendations," which was conduct not expressly defined as "technical" in nature under Code § 19.2-306.1(A). *Id.* at 182-84. We emphasized that "the district court's instruction to 'follow all recommendations' was explicitly tied to the district court's requirement to complete the mental health evaluation." *Id.* at 184. Moreover, "*the probation officer was not the one who recommended [the defendant] complete the psychosexual evaluation*." *Id.* (emphasis added). Thus, given the precise language in the sentencing order, the probation officer could not relieve the defendant of his obligation to complete the recommended psychosexual evaluation. Accordingly, we held that the defendant failed to follow the instructions of the sentencing court, not the probation officer, by failing to complete the recommended psychosexual evaluation. *Id.*

The record establishes that the conduct underlying Shifflett's failure to complete sex offender treatment and 200 community service hours at a location approved by Moss were failures to "follow the instructions of [his] probation officer" and, therefore, technical violations. Code § 19.2-306.1(A)(v). First, regarding Shifflett's failure to complete sex offender treatment, the sentencing order required Shifflett to "immediately *enroll* in counseling" with "a licensed sex offender provider/counselor." It did not require Shifflett to complete a sex offender treatment program. Instead, the sentencing order required Shifflett to "comply with all the rules and requirements *set by the Probation Officer*" and "complete any . . . *treatment . . . as directed by the probation officer*." (Emphases added). That condition did not require the probation officer merely to supervise Shifflett's completion of a sex offender treatment program specifically ordered by the sentencing court. Rather, it delegated to the probation officer the authority to decide what treatment programs Shifflett needed to complete, *if any*. Indeed, if the probation officer decided that no sex offender treatment program was necessary, Shifflett did not need to complete one. Thus, any requirement to complete a sex offender treatment program necessarily came from the probation officer, not the sentencing court. *Cf. Burford*, 78 Va. App. at 183-84 (holding defendant's failure to complete a psychosexual evaluation recommended by someone other than the probation officer was a violation of a "special condition" requiring defendant to complete a mental health evaluation and follow "all recommendations"). In effect, the sentencing order's directive for Shifflett to complete any treatment as directed by his probation officer simply required Shifflett to "follow the instructions of the probation officer." Code § 19.2-306.1(A)(v).

Consistent with Virginia Department of Corrections (DOC) policy, Moss imposed "Sex Offender Special Instructions" as conditions of Shifflett's probation, which required him to "[a]ttend and successfully complete a Sex Offender Treatment Program *approved by [his]*

*supervising officer.*" (Emphasis added). *See* Va. Dep't of Corr. Operating Procedure 735.3 (requiring probation officers to impose "Sex Offender Special Instructions" for persons convicted of certain sex crimes). As Moss reported, Shifflett "began" a sex offender treatment program in December 2020 but failed to *complete* the program as she had instructed. Thus, his failure to complete the sex offender treatment program was a failure to follow his probation officer's instruction and, therefore, a "technical violation" under Code § 19.2-306.1(A)(v). *See Thomas*, 77 Va. App. at 625 n.10 (holding defendant's failure to a complete community residential program as directed by his probation officer was a technical violation under Code § 19.2-306.1(A)(v)).

Similarly, the sentencing order instructed Shifflett to "*comply with a plan* of 200 hours of community service *coordinated* through adult probation that shall all be completed by October 7, 2021." (Emphases added). That condition required Shifflett to do nothing more than follow his probation officer's "plan" to complete a specific number of community service hours by a date certain. The record demonstrates that Shifflett completed over 200 hours of community service several months before the October 2021 deadline. Indeed, Fire Chief Marcus discussed Shifflett's community service with Moss and confirmed that in addition to completing 44 hours of approved community service at the fire station by July 2021, Shifflett performed 161 hours of community service at a church in February 2021. The "violation" was that Shifflett failed to do so at a location that Moss approved, which was a "failure to follow the instructions of the probation officer." Code § 19.2-306.1(A)(v). Accordingly, his failure to complete the required community service hours in the manner prescribed by his probation officer was a technical violation. Code § 19.2-306.1(A)(v); s*ee Diaz-Urrutia*, 77 Va. App. at 191 (observing that a violation of a "special condition" that requires a probationer to "do something . . . covered by the enumerated list of technical violations [in Code § 19.2-306.1(A)]" is a technical violation).

- 11 -

Notwithstanding the above, the Commonwealth argues that Shifflett's violations were not "technical violations" because the failure to complete community service and sex offender treatment is not conduct enumerated in Code § 19.2-306.1(A). The Commonwealth further asserts that the "ten types of conduct" Code § 19.2-306.1(A) defines as "technical violations" are "identical to the conduct prohibited by Conditions 2 through 11 of the standard terms and conditions of probation that are imposed by the [DOC]." The Commonwealth reasons that "only conduct that violates Conditions 2 through 11 of the standard terms of probation is a 'technical violation,' and conduct that violates any other condition of suspension is not."

But as we recently explained, Code § 19.2-306.1(A) defines technical violations by focusing on the "underlying violation conduct itself, not the particular language or label a trial court may have used in imposing a condition of probation." *Delaune*, 76 Va. App. at 383. If the underlying conduct "matches" the conduct specified in Code § 19.2-306.1(A), the violation is technical in nature. *Id.* Here, Shifflett's underlying conduct amounted to a failure to comply with his probation officer's instructions. We acknowledge that "in practice, the violations classified as technical ones [in subsection (A)] often stem from conditions that apply because a DOC probation officer has presented them to the felony probationer to sign as that person begins a new period of supervision." *Thomas*, 77 Va. App. at 621; *see also* Va. Crim. Sent'g Comm'n Ann. Rep. 49 (2021) (listing "standard" conditions of probation). Nonetheless, in considering whether a probation violation is "technical" in nature, we are bound by the General Assembly's definition of a "technical violation" in Code § 19.2-306.1(A), not the DOC's interpretation of what probation conditions are "standard."[4]

---

[4] Before amended and reenacted Code § 19.2-306 and newly enacted Code § 19.2-306.1 took effect, circuit court judges in revocation proceedings tailored any sanction to the nature and extent of violations proven. The change in law is an attempt to statutorily define the nature and extent of violations and dictate the sanction for those deemed "technical." Now, circuit court judges, as here, are required to conduct nuanced interpretation of a complex statutory framework

- 12 -

In sum, Shifflett's failure to complete sex offender treatment and 200 community service hours at an approved location were failures to "follow the instructions of the probation officer," which Code § 19.2-306.1(A)(v) defines as a "technical violation." As both violations were "considered at the same revocation hearing," the circuit court was obligated to treat them as a single violation. Code 19.2-306.1(A). Moreover, because Shifflett's probation violation was a "first technical violation," Code § 19.2-306(C) prohibited the circuit court from imposing active incarceration.[5]

## CONCLUSION

For the above reasons, the circuit court erred by imposing three months of active incarceration on Shifflett's first technical probation violation. Accordingly, we reverse the circuit court's judgment and remand for further proceedings consistent with this opinion.

*Reversed and remanded*.

---

to discern legislative intent and separate "technical" from "non-technical" violations, when both are often intertwined. "Here, on the heels of a sea change in the applicable law," the circuit court was "required to decipher a new sentencing scheme and make a ruling" without "any guidance beyond the new additions to the statutory scheme itself." *Thomas*, 77 Va. App. at 623. The legislature can resolve this maelstrom.

[5] Although the circuit court found Shifflett in violation of probation partially based on his "attitude" and failure to "cooperat[e] with the probation officer," the parties do not dispute that this conduct was a "technical violation" because it amounted to a failure to be "cooperative" under Code § 19.2-306.1(A)(v). Regardless, under *Delaune*, Shifflett's rude, uncooperative conduct was a technical violation under Code § 19.2-306.1(A)(v).

Ortiz, J., dissenting.

I dissent from the majority's decision finding that the circuit court erred in holding Shifflett's failure to complete sex offender treatment constituted only a first technical violation—"failure to follow the instructions of the probation officer"—under Code § 19.2-306.1(A)(v). Although I agree with the majority that Shifflett's community service violation constituted, at most, a first technical violation and that the Commonwealth consented to proceeding under the new statute, I would affirm the circuit court and find that Shifflett's failure to complete sex offender treatment was a major violation of a special condition.

As it was not listed by the majority, I separately note that "[w]hether to revoke a suspended sentence 'lies in the discretion of the trial court' and will not be reversed absent an abuse of that discretion." *Thomas v. Commonwealth*, 77 Va. App. 613, 619 (2023) (citing *Carroll v. Commonwealth*, 280 Va. 641, 654 (2010)). Although such discretion is broad, "it is subject, of course, to any applicable statutory limitations," reviewed de novo. *Id.* at 620.

Additionally, the majority notes only one of the ten technical violations enumerated by the General Assembly—failure to follow the instructions of the probation officer. All ten technical violations are a "probationer's failure to":

> (i) report any arrest . . . within three days to the probation officer;
> (ii) maintain regular employment or notify the probation officer of any changes in employment;
> (iii) report within three days of release from incarceration;
> (iv) permit the probation officer to visit his home and place of employment;
> (v) follow the instructions of the probation officer, be truthful and cooperative, and report as instructed;
> (vi) refrain from the use of alcoholic beverages to the extent that it disrupts or interferes with his employment or orderly conduct;
> (vii) refrain from the use, possession, or distribution of controlled substances or related paraphernalia;
> (viii) refrain from the use, ownership, possession, or transportation of a firearm;

(ix) gain permission to change his residence or remain in the Commonwealth or other designated area without permission of the probation officer; or
(x) maintain contact with the probation officer . . . .

Code § 19.2-306.1(A).

The technical violations in Code § 19.2-306.1(A) "reflect ten of the eleven specific requirements imposed on all probationers supervised by the Department of Corrections (DOC)." *Thomas*, 77 Va. App. at 621. These violations "are based on the standard Conditions of Probation Supervision signed by a [probationer and] . . . reflect Conditions 2 through 11 of the standard Conditions of Probation Supervision." Va. Crim. Sent'g Comm'n Ann. Rep. 49 (2021). Conditions 2 through 11 are near identical to the ten technical conditions, listed above. *See* Virginia Sent'g Guidelines, *Sent'g Revocation Rep. & Probation Violation Guidelines* 97 (2022), http://www.vcsc.virginia.gov/worksheets2021/Probation%20Violation%20Booklet%20032222_ Final.pdf.

"When the violation conduct matches the conduct listed in Code § 19.2-306.1(A), it is, by definition, a 'technical violation.'" *Delaune v. Commonwealth*, 76 Va. App. 372, 383 (2023). Although the violation conduct "need not be identical" to the conduct listed in Code § 19.2-306.1 to constitute a technical violation, the "'underlying' conduct [must] 'match[]' the listed technical violation in the statute." *Thomas*, 77 Va. App. at 624. As such, we held that a condition requiring a probationer to be "drug free" was not distinct from the underlying technical conduct prohibiting the use of "controlled substances or related paraphernalia." *Delaune*, 76 Va. App. at 382-83. But we held that a special condition prohibiting the use of alcohol was distinct from the underlying technical conduct prohibiting "the use of alcoholic beverages *to the extent that [it] disrupts or interferes with his employment or orderly conduct*." *Thomas*, 77 Va. App. at 625 (emphasis added); Code § 19.2-306.1(A)(vi).

- 15 -

The circuit court imposed the following conditions on Shifflett's suspended sentence: "Good Behavior"; "Supervised Probation"; "Counseling"; "DNA & Fingerprinting"; "Court Costs"; "Sex Offender Registry"; "No Contact [with Victim]"; "Community Service"; not evicting the victim; and bringing a chaperone when alone with female renters. The "Supervised Probation" condition stated in full:

> (**X**) **Supervised Probation**: The defendant shall be placed on supervised probation under the supervision of the Office of Department of Probation and Parole serving this Court (District 24 Probation and Parole) for a period commencing upon sentencing for **Two (2) Years** in which case the defendant shall report to probation within 48 hours from this sentencing date in order to schedule an intake appointment, and follow all the rules and regulations of probation, unless sooner released by court. (**X**) The defendant shall comply with all the rules and requirements set by the Probation Officer. (**X**) The defendant shall successfully complete any screening, assessment, testing, treatment and/or education as directed by the probation officer. (**X**) The defendant shall pay any fees and costs required by the probation officer. Failure to adhere to conditions of probation could result in a show cause and/or capias against the defendant.

This condition specifically required Shifflett to "successfully *complete*" treatment "as directed by the probation officer." (Emphasis added). The circuit court ordered a separate "Counseling" condition, which stated in full:

> (**X**) **Counseling**: The defendant shall immediately enroll in counseling after this sentencing date with a licensed sex offender provider/counselor, relating to his sexual conduct and matters associated therewith.

This condition specifically required Shifflett to *enroll* in a licensed counseling or treatment program with a sex offender provider/counselor. This requirement is distinct from the boilerplate language found in the preceding "Supervised Probation" provision.

We "may not construe the plain language of a statute 'in a manner that amounts to holding that the General Assembly meant to add a requirement to the statute that it did not

actually express.'" *Commonwealth v. Amos*, 287 Va. 301, 307 (2014) (quoting *Vaughn, Inc. v. Beck*, 262 Va. 673, 679 (2001)). "To supply omissions [to a statutory scheme] transcends the judicial function." *Iselin v. United States*, 270 U.S. 245, 251 (1926). This matter is even more clearcut than our decision in *Thomas*. Enrollment[6] in a licensed sex offender counseling or treatment program does not appear in any of the statutory technical violations or in the standard Conditions of Probation Supervision. And successful completion of "any screening, assessment, testing, treatment and/or education as directed by the probation officer" is similarly absent. It is impossible to say that failing to enroll in counseling or failing to complete a sex offender treatment program—explicitly authorized and mandated by the circuit court—is "'underlying' conduct" that matches any listed technical violation in Code § 19.2-306.1(A). *See Thomas*, 77 Va. App. at 624; *Burford v. Commonwealth*, 78 Va. App. 170, 182-84 (2023).

When a circuit court directs a sex offender to enroll in and complete specific counseling or treatment related to his or her offense, orders such counseling or treatment be supervised by probation, and the sex offender flagrantly defies the court's order,[7] the majority would find the sex offender guilty of a mere technical violation for failing to follow probation's instructions. I disagree. The circuit court must have the authority to delegate supervision of its special condition programs to probation, without such supervision inherently becoming a technical violation.

To support its decision, the majority misinterprets our recent holding in *Burford*. There, the trial court ordered Burford to undergo a "mental health evaluation" and to subsequently

---

[6] Although unnecessary here—because both enrollment and completion were ordered by the circuit court—I would additionally find that when a court orders "enrollment" in a program, it inherently orders "completion" of that program. Otherwise, a probationer could enroll in counseling, immediately disenroll, and remain in compliance.

[7] Shifflett was kicked out of the sex offender treatment program for being uncooperative and combative, insulting others in the program, and failing to take accountability for his actions.

- 17 -

follow "all recommendations." *Id.* at 180. After undergoing the court-ordered mental health evaluation, Burford's evaluator "determined that he [also] needed to complete a psychosexual evaluation." *Id.* at 176. This psychosexual evaluation was not part of the original court order, and Burford refused to complete it. *Id.* at 176-77. The trial court found that Burford thus violated a special condition of his suspended sentence. *Id.* at 178. We affirmed, holding that Burford's "noncompliance" was more than a mere technical violation of "failing to follow the instructions of the probation officer." *Id.* at 182. Instead, Burford's "underlying conduct" constituted a "failure to follow the instructions of the court," which had specifically ordered an evaluation and impliedly ordered subsequent treatment and/or evaluations in requiring Burford to "follow all recommendations." *Id.* at 183.

Here, like *Burford*, Shifflett also failed to follow the court's instructions to complete subsequently recommended evaluations and treatment. Unlike *Burford*, however, Shifflett's order was even more explicit.

As an aside—and after already finding that "Burford's suspended sentences were conditioned in part on a special condition"—the *Burford* panel noted that the probation officer was not the individual who ordered the psychosexual evaluation, rendering Burford's argument[8] even more absurd. *Id.* at 184. The majority latches onto this dicta to hold that any time a *probation officer* is court-ordered to supervise or conduct an evaluation, failure to comply constitutes a mere technical violation.

By the majority's logic, any supervision of a special condition by probation could become a technical violation, simply because the *probation officer* is the one supervising. As a result of this opinion, our courts will be forced to supervise sex offender treatment themselves to maintain such treatment as a "special condition"—an untenable situation for an overburdened

---

[8] Specifically, that Burford failed to follow probation's instructions.

judiciary.  Our circuit courts have carried the burden of untangling a new, complicated statute and fairly enforcing it.  The majority seeks to make that burden even heavier.

Shifflett clearly violated a special condition of his suspended sentence—to enroll in and complete a sex offender counseling program.  He did not merely fail to follow probation's instructions when he was discharged from that program for being uncooperative and combative, insulting others, and failing to take accountability for his actions.  To hold otherwise ignores the circuit court's clear sentencing order and flies in the face of our holdings in *Delaune*, *Thomas*, and *Burford*.  I respectfully dissent.