COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judge Chaney and Senior Judge Humphreys
Argued at Richmond, Virginia

RASHID ABDUL JALAL

v.     Record No. 0060-24-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE ROBERT J. HUMPHREYS
APRIL 8, 2025

FROM THE CIRCUIT COURT OF KING GEORGE COUNTY
Herbert M. Hewitt, Judge

Eric Weathers, Assistant Public Defender (Catherine French
Zagurskie, Chief Appellate Counsel; Virginia Indigent Defense
Commission, on briefs), for appellant.

Kelly L. Sturman, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Rashid Abdul Jalal appeals the circuit court's order revoking his suspended sentence and

imposing one year of active incarceration. He argues that his probation violations were

"technical" in nature, so the trial court was not authorized to impose more than 14 days of jail

time. In addition, Jalal asserts that the court erred by finding that he had violated a condition to

refrain from alcohol use that he contends was not imposed until after the alleged use. Finally, he

argues that the circuit court violated his due process confrontation rights by admitting hearsay

evidence that he had tested positive for controlled substances.

BACKGROUND

"On appeal, '[w]e "view the evidence received at [a] revocation hearing in the light most

favorable to the Commonwealth, as the prevailing party, including all reasonable and legitimate

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

inferences that may properly be drawn from it.""" *Green v. Commonwealth*, 75 Va. App. 69, 76 (2022) (alterations in original) (quoting *Johnson v. Commonwealth*, 296 Va. 266, 274 (2018)).

Jalal pleaded guilty to pickpocketing more than five dollars, possession of a Schedule I/II controlled substance, misdemeanor entering a motor vehicle without authorization, and misdemeanor sexual battery. In January 2023, the circuit court sentenced him to 10 years and 18 months' incarceration with 8 years and 6 months suspended.[1] The court placed Jalal "on active, supervised probation" and ordered him to complete "any substance abuse counseling, testing, and treatment as deemed necessary by the Office of Probation and Parole, and to obey all reasonable commands." The court also ordered Jalal to "follow all laws and commit no other crimes; and cooperate with Probation and Parole and all required evaluations and treatment."

Jalal began supervision in April 2023. After he tested positive for cocaine, phencyclidine (PCP), and fentanyl, the court revoked his suspended sentence but resuspended it in full.

Jalal returned to supervised probation in August 2023. On September 7, 2023, the probation office referred Jalal to Brightview Health for a substance use evaluation and to Counseling and Forensics Services, Inc. (CFS), to evaluate whether he needed sex offender treatment. CFS recommended that Jalal be placed on the special sex offender probation conditions.

Jalal reviewed and signed the special sex offender instructions on September 15, 2023. As part of those instructions, he agreed not to consume or possess any alcohol, marijuana, or illegal substances. In November 2023, Sarah Baker, who supervised Jalal's assigned probation officer, reported that Jalal had tested positive for fentanyl in August 2023, for alcohol on

---

[1] For Jalal's sexual battery conviction, the court imposed a sentence of 12 months in jail with no time suspended.

September 7 and 15, 2023, and cocaine in October 2023.[2]  The report also alleged that Jalal had violated sex offender restrictions requiring him to be home after 6:00 p.m. on Halloween with his porch lights off and a sign on his door indicating that he does not participate in trick-or-treating. Two probation officers visited Jalal's residence after 6:00 p.m. on Halloween night but Jalal was not at home and had not posted the required sign.  In December 2023, Jalal's assigned probation officer submitted an addendum alleging that Jalal had failed to report new arrests during unauthorized travel to Georgia.

Baker testified at Jalal's revocation hearing that the probation office had referred Jalal to CFS because of his sexual battery conviction.  When she began testifying about Jalal's positive drug screens, Jalal objected on foundation and due process confrontation grounds.  He argued that Baker was not Jalal's supervising officer, was not involved in the drug testing, and lacked direct knowledge of the alleged violations.  The court overruled Jalal's objection, finding Baker's "testimony to be appropriate and reasonable and accurate."  The Commonwealth later moved Baker's report into evidence without further objection.

Jalal cross-examined Baker about the probation office's drug testing procedures.  Baker testified that another probation officer watched Jalal provide the urine samples before signing a chain of custody form, sealing the samples, and transferring them to the Virginia Division of Consolidated Laboratory Services for testing.  The laboratory then notified the probation office of the testing results through a computer system.  Baker was unfamiliar with the laboratory's internal testing processes.

After both sides rested, Jalal argued that he was guilty of at most a second technical violation because the probation officer, and not the court, had imposed the sex offender

_____

[2] Baker filed the report because Jalal's assigned probation officer was on leave at the time.

conditions.[3] Accordingly, Jalal argued that the circuit court could sentence him to no more than 14 days of active incarceration. The court disagreed, finding that the sex offender conditions were special conditions because they resulted from "an expert evaluation" and "because it's extremely important for someone that's been convicted of a crime like that to have treatment." The court revoked Jalal's suspended sentence and resuspended all but one year.

## ANALYSIS

### I. The circuit court did not violate Code § 19.2-306.1.

"Whether to revoke a suspended sentence 'lies in the discretion of the trial court' and will not be reversed absent an abuse of that discretion." *Thomas v. Commonwealth*, 77 Va. App. 613, 619 (2023) (quoting *Carroll v. Commonwealth*, 280 Va. 641, 654 (2010)). "If the court, after hearing, finds good cause to believe that the defendant has violated the terms of suspension, then the court may revoke the suspension and impose a sentence in accordance with the provisions of [Code] § 19.2-306.1." Code § 19.2-306(C).

Code § 19.2-306.1 "creates two tiers of probation violations: (1) technical violations, based on a probationer's failure to do one of ten enumerated actions, and (2) non-technical violations." *Heart v. Commonwealth*, 75 Va. App. 453, 466 (2022). The statute "contains specific limitations on sentencing" based on whether a probationer has committed a technical or non-technical violation. *Green*, 75 Va. App. at 75. For a probationer's second technical violation, the court may impose a maximum of 14 days in jail. Code § 19.2-306.1(C). If a probationer violates a non-technical condition, however, "the court may revoke the suspension and impose or resuspend any or all of that period previously suspended." Code § 19.2-306.1(B). Whether a violation is technical or non-technical is an issue of statutory interpretation that we

---

[3] It is undisputed that Jalal's failure to report new charges and unauthorized travel were technical violations under Code § 19.2-306.1(A)(i) and (ix), and his positive tests for fentanyl and cocaine were technical violations under Code § 19.2-306.1(A)(vii).

review de novo. *Commonwealth v. Delaune*, 302 Va. 644, 655 (2023). "As probation is an act of grace, [the Supreme Court] has liberally construed probation statutes to allow courts to achieve probation's remedial purpose, affording courts the latitude to rehabilitate the offenders before them." *Hannah v. Commonwealth*, 303 Va. 109, 119 (2024).

Non-technical conditions are any "condition other than (i) a technical violation [enumerated in Code § 19.2-306.1(A)] or (ii) a good conduct violation that did not result in a criminal conviction." *Thomas*, 77 Va. App. at 622 (quoting Code § 19.2-306.1(B)). "Not specifically mentioned in the statutory scheme is another category of violation—violations of conditions or instructions referred to as 'special.'" *Id.* at 623. "[S]pecial conditions . . . are often imposed on a probationer convicted of a particular category of offenses, such as sex or gang-related offenses." *Id.*

To determine whether a condition is technical or non-technical, we ask whether "'the violation conduct *matches* the conduct listed' in one of the ten subsections of Code § 19.2-306.1(A)." *Id.* at 624 (quoting *Delaune v. Commonwealth*, 76 Va. App. 372, 383 (2023), *aff'd*, 302 Va. 644 (2023)). If the underlying conduct matches an enumerated condition, it is technical, regardless of the label applied to that conduct by the trial court. *Id.* Thus, a trial court may not turn the requirement to refrain from using marijuana into a special condition by including it in the sentencing order because that condition is already contained in Code § 19.2-306.1(A)(vii). *Delaune*, 302 Va. at 658-59. But a condition to abstain entirely from alcohol is a non-technical special condition because Code § 19.2-306.1(A)(vi) prohibits alcohol use only "to the extent that it disrupts or interferes with [the probationer's] employment or orderly conduct." *Thomas*, 77 Va. App. at 625-26.

The enumerated technical condition at issue in this case is the requirement that the probationer "follow the instructions of the probation officer, be truthful and cooperative, and

- 5 -

report as instructed." Code § 19.2-306.1(A)(v).[4] Jalal and the dissent argue that Jalal's violations of the sex-offender instructions constituted only a failure to follow the instructions of his probation officer, which is a technical violation. We disagree.

In determining whether an instruction was given by a probation officer, a court should look to the sentencing order to determine whether the circuit court imposed the condition. *See Shifflett v. Commonwealth*, 81 Va. App. 277, 295 (2024) (en banc); *Terry v. Commonwealth*, 81 Va. App. 241, 249-50 (2024). In conducting this analysis, we are mindful that a "circuit court must have the authority to delegate supervision of its special condition programs to probation [officers,] without such supervision inherently becoming a technical violation." *Shifflett*, 81 Va. App. at 295. "If the circuit court imposed the condition, the condition is not among those listed in Code § 19.2-306.1(A), and the probation officer merely supervised its implementation, then it does not constitute a failure to follow the instructions of the probation officer within the meaning of Code § 19.2-306.1(A)(v)." *Terry*, 81 Va. App. at 250.

In *Shifflett*, the circuit court ordered Shifflett to enroll in sex offender counseling and "successfully complete any screening, assessment, testing, treatment and/or education as directed by the probation officer." *Shifflett*, 81 Va. App. at 285 (emphasis omitted). Shifflett subsequently signed the sex offender special instructions and enrolled in—but failed to complete—sex offender counseling. *Id.* at 285-86. We held that Shifflett had violated a non-technical special condition because his underlying conduct—failure to complete sex offender counseling—was not specifically enumerated in Code § 19.2-306.1(A). *Id.* at 295. And we held that the court's order that Shifflett enroll in counseling impliedly required him to complete it. *Id.* The fact that the "day-to-day administration and management of Shifflett's

---

[4] *Thomas* expressly left open whether the no-alcohol condition imposed by the probation officer in that case could be considered a technical condition under Code § 19.2-306.1(A)(v) because Thomas did not raise that argument. *Thomas*, 77 Va. App. at 625 n.10.

treatment" was "directed by the probation officer" did not convert the violation into a technical violation. *Id.* at 296-97. Consequently, Shifflett's underlying conduct "'was not the failure "to follow the instructions of the probation officer," but rather, the failure to follow the instructions of the court.'" *Id.* at 296 (quoting *Burford v. Commonwealth*, 78 Va. App. 170, 183 (2023)).

We reached a similar conclusion in *Burford*, where the general district court ordered Burford to undergo a mental health evaluation and complete "all recommendations." *Burford*, 78 Va. App. at 175. After Burford completed the mental health evaluation, his probation officer ordered him to undergo a psychosexual evaluation, which Burford did not complete. *Id.* at 176. We held that Burford's failure to complete the psychosexual evaluation was a non-technical violation because it did not match the enumerated conduct in Code § 19.2-306.1(A). *Id.* at 183-84. Moreover, the district court had ordered Burford to follow "all recommendations" arising from the mental health evaluation, which we explained "effectively crafted a special condition that required follow-through." *Id.* at 184. Accordingly, when Burford failed to complete the psychosexual evaluation, he failed to follow the court's order. *Id.*

Our precedents make clear that we must interpret a circuit court's orders broadly to preserve its ability to delegate the day-to-day supervision of probationers to the probation office without depriving it of the broad "latitude" and rehabilitative tools necessary for reforming offenders. *Hannah*, 303 Va. at 119. "[U]nless a statute specifically imposes on the circuit court the duty to set the parameters of [a probation] condition . . . , the circuit court may set the bounds of the condition and delegate to the probation office the duty to set the parameters of th[at] condition[]." *Shifflett*, 81 Va. App. at 291-92 (alterations in original) (quoting *Fazili v. Commonwealth*, 71 Va. App. 239, 254 (2019)). "Essentially, while the circuit court sets the

terms and conditions of probation, probation officers enforce those terms and conditions and exercise discretion in doing so." *Id.* at 298 (quoting *Fazili*, 71 Va. App. at 255).[5]

Our dissenting colleague cites *Watts v. Commonwealth*, 82 Va. App. 428, 458 (2024) (en banc), as authority that, as in *Watts*, Jalal had merely committed the technical violation of probation of failing to follow the instructions of a probation officer. However, that view in *Watts* comes from a plurality opinion and does not represent the judgment of a majority of the Court. In *Watts*, it was undisputed that the circuit court expressed its intent to impose a special condition of probation and that oral pronouncement by the circuit court was not reflected in its sentencing order. This Court's en banc review of *Watts* resulted in three separate opinions. Not one of those opinions reflects a majority judgment that the sentencing order in *Watts* correctly imposed no special conditions of probation. Regardless, the facts in *Watts* are inapplicable here. A holding that the written order's provision that Watts "comply with all rules and requirements set by the probation officer" did not encompass special gang-related probation conditions does not affect our analysis here of the language requiring Jalal to complete and cooperate with treatment. *See id.* at 445.

---

[5] The dissent's analysis would limit the ability of a circuit court to delegate the minutiae of implementing court-ordered evaluation and treatment of a probationer by requiring the court to micro-manage the supervision of those it places on probation. The dissent's approach to construction of the statute would also effectively frustrate the purpose of probation to provide a defendant with an opportunity to correct behavior and ignores our Supreme Court's mandate in *Hannah* that limitations on probation be liberally construed to effectuate its laudable purpose of rehabilitation.

Moreover, the interpretation suggested by the dissent would have a chilling effect on the general use of probation by the trial courts as an alternative to incarceration. The dissent's construction of the statute effectively eliminates immediate consequences for the failure by a probationer to engage with a probation officer in carrying out the intent of court orders that delegate to a probation officer their implementation with less than the degree of specificity demanded by the dissent. Thus, if adopted, the dissent's view of Code § 19.2-306.1 would provide trial courts far less incentive to seriously consider probation as an alternative to immediate incarceration.

Here, the circuit court instructed Jalal to complete "any substance abuse counseling, testing, and treatment *as deemed necessary by the Office of Probation and Parole*" and to "cooperate with Probation and Parole and *all required evaluations and treatment*." (Emphases added). The probation office referred Jalal to CFS for an evaluation, and CFS determined that Jalal should be subject to the sex offender special conditions. Thus, the record makes clear that the circuit court construed its own order as including the sex offender conditions were a part of the "all required evaluations and treatment" that Jalal was to comply with.[6]

We disagree with Jalal, and the dissent does not dispute, that the sex offender conditions do not at least partially constitute "treatment." Among other definitions, "treatment" can mean "preventive guidance and corrective training." *Treatment*, *Webster's Third New International Dictionary* (2002). Certainly, sex offender instructions are designed both to protect the public and to promote "genuine rehabilitation." *See Murry v. Commonwealth*, 288 Va. 117, 127 (2014) (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 875 (1987)).

Part of Jalal's treatment that arose from his CFS evaluation as a sex offender was that he stay home on Halloween and post a sign on his door to discourage trick-or-treaters. When he failed to comply with that condition, he "fail[ed] to follow the instructions of the court" to complete "all required evaluations and treatment." *See Shifflett*, 81 Va. App. at 296. And once the circuit court interpreted its own order as including the delegation to the probation officer of the specific requirement to limit Jalal's exposure to potential child victims, the circuit court could "revoke the suspension and impose or resuspend any or all of that period previously

---

[6] We note that the dissent interprets the sentencing order's references to treatment narrowly. The dissent suggests that the phrase "substance abuse counseling, testing, and treatment" refers specifically to substance abuse treatment and that the phrase "all required evaluations and treatment" imposes a simple good behavior condition. In contrast, we accept the trial court's broader construction of those phrases. "[C]ircuit courts have the authority to interpret their own orders," especially when, as here, the language is arguably ambiguous. *See Roe v. Commonwealth*, 271 Va. 453, 457 (2006).

suspended," regardless of whether Jalal also violated the no-alcohol condition. Code § 19.2-306.1(B). Accordingly, the circuit court did not violate the technical violation limitations of Code § 19.2-306.1.

## II. Jalal did not preserve his factual challenge to the no-alcohol violation.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. The objection "must be both *specific* and *timely*." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)). "Making one specific argument on an issue does not preserve a separate legal point on the same issue for review." *Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (en banc) (citing *Clark v. Commonwealth*, 30 Va. App. 406, 411-12 (1999)). A contemporaneous objection allows opposing counsel and the trial court a fair opportunity to address the challenge and prevent unnecessary appeals and retrials. *Bethea*, 297 Va. at 743-44; *Scialdone v. Commonwealth*, 279 Va. 422, 437 (2010); *Jones v. Commonwealth*, 71 Va. App. 597, 607 (2020).

Jalal argues that the circuit court erred by finding that he violated the sex offender condition that he refrain from using alcohol because that condition was not imposed until after his positive tests. He concedes that he did not make that argument to the circuit court but asks that we apply Rule 5A:18's ends of justice exception. We decline to do so.

"The 'ends of justice' exception to Rule 5A:18 is 'narrow and is to be used sparingly.'" *Melick v. Commonwealth*, 69 Va. App. 122, 146 (2018) (quoting *Pearce v. Commonwealth*, 53 Va. App. 113, 123 (2008)). "[T]o avail oneself of the exception, [the appellant] must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have

occurred." *Holt v. Commonwealth*, 66 Va. App. 199, 210 (2016) (en banc) (second alteration in original) (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 221 (1997)).

We need not address Jalal's factual challenge to the no-alcohol condition to determine whether the circuit court could revoke Jalal's sentence and impose more than 14 days of active incarceration because, as previously discussed, the Halloween restrictions were non-technical conditions of Jalal's probation. Even so, Jalal asks us to remand to determine what influence, if any, the no-alcohol condition had on the amount of active incarceration the circuit court imposed. *See Thomas*, 77 Va. App. at 627 (remanding because "the court's erroneous ruling that the marijuana violation was not technical could have impacted its decision regarding how much active time to impose" even though the probationer had also committed a non-technical violation). But in speculating that the court would have imposed less time without the no-alcohol violation, Jalal fails to establish that a miscarriage of justice actually occurred. At most, he demonstrates that a miscarriage of justice *might* have occurred. We do not apply the ends of justice exception in such a circumstance. *Holt*, 66 Va. App. at 209. Consequently, we decline to address Jalal's factual challenge to his no-alcohol violation.

III. The circuit court did not violate Jalal's limited right to confront witnesses.

Generally, determining "the admissibility of relevant evidence is within the sound discretion of the trial court." *Henderson v. Commonwealth*, 285 Va. 318, 329 (2013) (quoting *Beck v. Commonwealth*, 253 Va. 373, 384-85 (1997)). But we review de novo whether the admission of evidence violates a defendant's due process rights. *Id.* "Although the Sixth Amendment right of confrontation applies only in criminal trials," the Due Process Clause of the Fourteenth Amendment includes a "more limited right of confrontation" applicable in probation revocation proceedings. *Id.* at 325-26. Jalal argues that the circuit court violated his due process

confrontation right by allowing Baker to testify about his positive drug tests despite her lack of personal knowledge concerning those tests.

"[O]nce a 'criminal prosecution has ended in a conviction,' the defendant 'is not entitled to the "full panoply" of constitutional rights to which he was entitled at trial.'" *Jenkins v. Commonwealth*, 71 Va. App. 334, 343 (2019) (quoting *Henderson*, 285 Va. at 325). Thus, "[h]earsay is frequently admitted in revocation proceedings." *Henderson*, 285 Va. at 326. Testimonial hearsay like the allegations in Baker's report, however, "is subject to the limited confrontation" right and "may be admitted only when 'the [circuit court] specifically finds good cause for not allowing confrontation.'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)).

There are two overlapping tests for "determining whether the denial of the right to confrontation" was supported by "good cause." *Id.* at 327. The "balancing test" "requires the court to weigh the interests of the defendant in cross-examining his accusers against the interests of the prosecution in denying confrontation." *Id.* at 327-28. And the "reliability test" permits the admission of hearsay "if it possesses substantial guarantees of trustworthiness." *Id.* at 327. Such guarantees can include "statements by the probationer that directly or circumstantially corroborate the accusations," "evidence of substantial similarities between past offenses and the new accusations," and "a probationer's failure to offer contradictory evidence." *Johnson*, 296 Va. at 276 (quoting *Henderson*, 285 Va. at 327). "The 'court may apply either test, as may be most appropriate in the circumstances.'" *Saunders v. Commonwealth*, 62 Va. App. 793, 809 (2014) (quoting *Henderson*, 285 Va. at 328).

The circuit court found that Baker's testimony that Jalal had tested positive for alcohol, cocaine, and fentanyl was "appropriate and reasonable and accurate," essentially finding that the Commonwealth's evidence satisfied the reliability test. We agree. "Evidence consisting of 'a

- 12 -

report from one social worker, a government official, to another' is evidence of reliability and possesses 'substantial guarantees of trustworthiness.'" *Id.* (quoting *Henderson*, 285 Va. at 327). Here the challenged evidence was a report from one government employee to another that Jalal had tested positive for alcohol and controlled substances. There were also "substantial similarities between [Jalal's] past offenses and the new accusations." *Johnson*, 296 Va. at 276. After all, Jalal's prior revocation was based, in part, on his testing positive for cocaine and fentanyl, the same drugs at issue here. And Baker testified in detail about the probation office's drug testing process, including that a probation officer watched Jalal provide the samples before sealing those samples and transmitting them to the lab. Although Baker had no direct knowledge of the lab's internal testing process, Jalal presented no evidence of irregularities. *See id.* (listing "a probationer's failure to offer contradictory evidence" as a factor supporting the evidence's reliability). Indeed, when the court pressed Jalal for "evidence of actual malfeasance," Jalal conceded he had none. Given those circumstances, we agree with the circuit court that the Commonwealth's evidence was sufficiently reliable.[7]

Jalal's reliance on *Cox v. Commonwealth*, 65 Va. App. 506 (2015), is misplaced. In *Cox*, we held that the circuit court's admission of testimonial hearsay solely on the ground that "hearsay rules are greatly relaxed" was error because it was not based on a good-cause finding. *Id.* at 513, 520. Here, by contrast, the circuit court's comments reflect that it applied the reliability test for good cause, even if it did not use those exact terms. Accordingly, the circuit court correctly admitted evidence of Jalal's positive drug tests at the revocation hearing.

---

[7] Jalal did not raise a separate objection to the admission of Baker's report. To the extent he preserved an objection to the admission of the report, that report was reliable for the same reasons that Baker's testimony was reliable. Moreover, admission of the report itself would be at most harmless error given Baker's testimony about the allegations made in the report.

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*

Chaney, J., dissenting in part, and concurring in part.

I concur with the majority's findings that Jalal did not preserve his factual challenge to the no-alcohol condition and that the circuit court did not violate Jalal's right to confront witnesses. However, I respectfully disagree with the majority's holding affirming the circuit court's revocation of Jalal's probation for violating the Halloween-related sex offender probation conditions. The majority's holding that these were "special conditions" which constitute non-technical conditions contradicts both *Commonwealth v. Delaune*, 302 Va. 644 (2023), and *Watts v. Commonwealth*, 82 Va. App. 428 (2024) (en banc), by allowing courts to craft broad sentencing orders that circumvent the sentencing limitations of Code § 19.2-306.1(A). Nor are Jalal's Halloween-related conditions "counseling" or "treatment" as part of the court's ordered substance abuse probation condition. The Halloween-related conditions were not court-ordered. Rather, they were "instructions" from the CFS recommendation following the evaluation that Jalal's probation officer independently referred him to because of his conviction for misdemeanor sexual battery. Therefore, I respectfully dissent from the portion of the majority's decision finding that the circuit court did not violate Code § 19.2-306.1.

Code § 19.2-306.1(A) limits sentences when a court revokes a suspended sentence for enumerated probation violations, called "technical conditions." In determining whether certain behavior by a probationer is technical or non-technical, courts look to "the underlying violation conduct itself, not the particular language or label a trial court may have used in imposing a condition of probation." *Delaune*, 302 Va. at 652 (quoting *Delaune v. Commonwealth*, 76 Va. App. 372, 383 (2023)). The language of a sentencing order "need not be identical" to that of technical violations delineated in Code § 19.2-306.1(A), "as long as the probationer's proscribed 'underlying' conduct 'matches' the listed technical violation in the statute." *Thomas v. Commonwealth*, 77 Va. App. 613, 624 (2023) (quoting *Delaune*, 76 Va. App. at 383).

- 15 -

Conduct that falls outside of that listed in Code § 19.2-306.1(A) may still be made a condition of a suspended sentence, which is "imposed by a court and '[is] acknowledged and agreed to by a probationer in written form when meeting with his probation officer to begin a period of supervision.'" *Burford v. Commonwealth*, 78 Va. App. 170, 183 (2023) (quoting *Thomas*, 77 Va. App. at 623). "In order for the violation of 'another condition' to fall outside of the sentencing limitations that apply to technical violations under Code § 19.2-306.1, the condition at issue must relate to conduct that is *wholly independent* of the technical violations listed in Code § 19.2-306.1(A)." *Delaune*, 302 Va. at 657 n.3 (emphasis added). But a violation of a "special condition" need not be immediately categorized as a non-technical violation if the language of such special condition nevertheless matches conduct described in Code § 19.2-306.1(A). *Delaune*, 76 Va. App. at 383.

This Court addressed technical violations most recently in *Watts v. Commonwealth*, 82 Va. App. 428 (2024) (en banc).[8] At Watts's first revocation hearing in 2021, the circuit court orally stated that conditions of the suspended sentence included the gang prohibitions imposed by Watts's probation officer, but the court's written orders did not expressly contain that condition. *Id.* at 438-39. Later, Watts's probation officer filed a major violation report alleging

---

[8] The majority discounts *Watts* as a plurality opinion, noting that "[n]ot one" of the three separate opinions in the case "reflects a majority judgment that the sentencing order . . . correctly imposed no special conditions of probation." *Supra* at 8. However, the five concurring judges agreed with the six judges in the majority that the circuit court's 2021 revocation order did not include prohibitions regarding gangs and that the court had erred in interpreting its order to conclude that the gang prohibitions set by the probation officer were special conditions. *Compare* 82 Va. App. at 436 (Chaney, J., with whom Huff, Ortiz, Causey, Friedman and Callins, JJ., join), *with id.* at 462-64 (Raphael, J., concurring, with whom Malveaux, Athey, Lorish and Frucci, JJ., join). A reasonable reading of the majority and concurring opinions indicates that the sentencing order did not impose any special conditions.

The majority and concurrence disagreed on whether on remand the circuit court could consider amending the 2021 order nunc pro tunc to include the gang prohibitions. *Id.* at 461-62, 464 (Raphael, J., concurring). The dissent agreed with the concurrence that the court could consider amending the order. *Id.* at 470-71 (Fulton, J., dissenting, with whom Decker, C.J., Beales, O'Brien and AtLee, JJ., join).

- 16 -

that Watts failed to follow two of the special gang-related probation conditions enumerated in a document created by probation and parole, and the circuit court found that the violation was non-technical. *Id.* at 440-42. This Court held that the court erred in its ruling because the gang conditions were imposed by Watts's probation officer, not the court, and thus were not a "special condition" of probation. *Id.* at 458-59. Further, Watts's failure to follow the instructions of a probation officer was an enumerated technical violation under Code § 19.2-306.1(A)(v). *Id.* at 459-60.

> A circuit court speaks only through its written orders as determined by the express language of the order. The court may not interpret a written order to include a condition that the order does not contain, nor may it give independent effect to an oral instruction not incorporated into a written order.

*Id.* at 436. In *Watts*, this Court emphasized the importance of "look[ing] to the language of the written sentencing order to determine whether a probation violation is technical or non-technical." *Id.* at 460. As explained in *Delaune* and reiterated in *Watts*, "the sentencing limits for first and second technical probation violations apply if the violation is based on conduct defined as a 'technical violation' in the ten technical violations enumerated in Code § 19.2-306.1(A)." *Id.* at 458 (citing *Delaune*, 76 Va. App. at 382-83). A court cannot circumvent the protections of technical violations as described in Code § 19.2-306.1(A) merely by labeling it a violation of some "special condition." *See id.*; *Shifflett v. Commonwealth*, 81 Va. App. 277, 292 n.5 (2024) (en banc) ("[A] court may articulate a specially identified condition in its sentencing order, but a violation of the condition should still be considered technical, if the conduct is enumerated in Code § 19.2-306.1(A).").

This issue before us is whether Jalal's Halloween-related probation violations were a failure to "follow the instructions of the probation officer, be truthful and cooperative, and report

- 17 -

as instructed." Code § 19.2-306.1(A)(v). *Terry v. Commonwealth*, 81 Va. App. 241 (2024), on which the majority relies, tells us:

> In determining whether an instruction was given by a probation officer, *an imperative factor to consider is whether the circuit court or the probation officer imposed the condition.* If the circuit court imposed the condition, the condition is not among those listed in Code § 19.2-306.1(A), and the probation officer merely supervised its implementation, then it does not constitute a failure to follow the instructions of the probation officer within the meaning of Code § 19.2-306.1(A)(v).

*Id.* at 249-50 (emphasis added) (citation omitted). Necessarily, then, if the probation officer set a condition outside of that imposed by the circuit court's order, a violation would be considered a technical violation under Code § 19.2-306.1(A)(v).

The majority cites *Shifflett v. Commonwealth* as evidence that a circuit court may delegate the supervision of its special condition programs to a probation officer without such supervision becoming a technical violation under Code § 19.2-306.1(A). The case, however, is factually distinguishable from Jalal's case. The circuit court ordered Shifflett to enroll in sex offender counseling and "successfully complete any screening, assessment, testing, treatment and/or education as directed by the probation officer." 81 Va. App. at 285. The court also directed that Shifflett complete 200 hours of community service coordinated by his probation officer. *Id.* at 284. The circuit court found that Shifflett violated his probation because he did not complete the counseling program and failed to get all of his community service hours preapproved. *Id.* at 286-88. This Court, sitting en banc, rejected Shifflett's argument that his violations were technical. *Id.* at 298. The Court held that he violated non-technical, special conditions because his failure to comply was conduct not matching the technical violations listed in Code § 19.2-306.1(A). *Id.* at 298-99.

But the language in Shifflett's order, purportedly delegating the circuit court's authority to a probation officer to oversee court-ordered treatment, is absent from the order in this case.

- 18 -

Here, the circuit court's order did not impose any conditions related to Jalal being a sex offender. *Indeed, the court did not suspend any of the twelve-month sentence it imposed for the misdemeanor sexual battery conviction.* The only sentences the court suspended were for Jalal's two felony convictions, one of which was for drug possession. As a condition of supervised probation, the circuit court instructed Jalal to complete "any *substance abuse* counseling, testing, and treatment as deemed necessary by the Office of Probation and Parole, and to obey all reasonable commands." (Emphasis added).

The majority contends that limiting counseling and treatment to substance abuse reads the order too narrowly, as a circuit court may interpret its own orders when the language is ambiguous. But the court's interpretation is subject to judicial review, and the interpretation must be reasonable. *See Roe v. Commonwealth*, 271 Va. 453, 457-58 (2006). Here, the order is not ambiguous. The language "as deemed necessary by the Office of Probation and Parole" clearly applies to substance abuse and cannot be reasonably read as imposing court-ordered sex offender conditions.

The circuit court's order also contained a "good behavior" clause that required Jalal to "cooperate with Probation and Parole and all required evaluations and treatment." Interpreting this language as making the sex offender probation conditions "special conditions" and their violation non-technical would effectively nullify Code § 19.2-306.1(A). A good behavior violation has the same statutory sentencing limitations as a technical violation. *See* Code § 19.2-306.1(B) (noting that all or any part of a suspended sentence may be revoked if the defendant violated a "condition other than (i) a technical violation or (ii) *a good conduct violation* that did not result in a criminal conviction" (emphasis added)).

Thus, the analysis begins with the language of the circuit court's sentencing order setting forth the conditions of probation, which required Jalal to comply with "substance abuse

- 19 -

counseling, testing, and treatment as deemed necessary by the Office of Probation and Parole."

The unambiguous language of the court's probation condition makes it clear that the CFS's

Halloween-related conditions are neither substance abuse "treatment" nor "counseling." To

"treat" someone is "[t]o care for (a medical patient); to try to cure the illness or injury . . . to

subject (a disease, debility, etc.) to a regimen of medicine, exercise, etc." *Treat (7), (8)*, *Black's*

*Law Dictionary* (11th ed. 2019). To "counsel" someone is to "furnish[ them with] advice or

guidance, esp. by a knowledgeable person such as a life coach, a psychologist, or a

psychotherapist." *Counseling (2)*, *Black's Law Dictionary*, *supra*. CFS's Halloween-related

conditions are not designed to provide Jalal with "a regimen" or "knowledgeable" "advice" to

help him overcome his substance abuse issues.

Pursuant to the court's sentencing order requiring Jalal to seek "substance abuse

counseling [or] treatment," Jalal's probation officer referred Jalal to a health center for a

substance use evaluation, which Jalal completed, and treatment, in which Jalal enrolled.

However, outside the substance abuse condition, Jalal's probation officer independently referred

Jalal to CFS for sex offender evaluation and treatment based on his misdemeanor sexual battery

conviction. CFS then recommended that Jalal's probation officer place him under "sex offender

instructions," which required him to refrain from drug and alcohol consumption and adhere to a

curfew from 9:00 p.m. to 5:30 a.m. An additional requirement was imposed specifically for

Halloween. The CFS evaluation and resulting "sex offender instructions" were neither imposed

by the circuit court nor related to the "substance abuse counseling, testing, and treatment"

probation condition. Rather, they were instituted at the sole discretion of Jalal's probation

officer. Therefore, Jalal's violation of the Halloween-related "sex offender instructions" was

conduct matching the delineated technical violation of Code § 19.2-306.1(A)(v) for failure to

follow instructions of the probation officer. The sentencing order, Code § 19.2-306.1(A), and

- 20 -

legal precedent require reversal of the circuit court's judgment that Jalal violated a non-technical, special condition.

The majority contends that limiting a circuit court's ability to delegate implementation of its orders to probation officers would require courts to "micro-manage" probation, frustrate the purpose of probation to correct an offender's behavior, and have "a chilling effect" on using probation rather than incarceration by foreclosing immediate consequences for failing to follow instructions of a probation officer. *Supra* at 7-8 & 8 n.5. Aside from the speculative nature of this stance, it contravenes legislative intent. In enacting Code § 19.2-306.1(A), the General Assembly expressly categorized probation violations as technical or non-technical and set limits of punishment accordingly. Regardless of whether

> a condition of probation is labeled a "special condition" or included in the sentencing order as a condition of the suspended sentence, a violation of the condition is a technical violation under Code § 19.2-306.1 if the violation is based on the probationer's failure to comply with any of the ten requirements set forth in Code § 19.2-306.1(A).

*Watts*, 82 Va. App. at 459; *see also Delaune*, 76 Va. App. at 383 ("When the violation conduct matches the conduct listed in Code § 19.2-306.1(A), it is, by definition, a 'technical violation.'").[9] We held in *Shifflett*, 81 Va. App. at 295-96, that considering a violation of any condition required by a trial court and supervised by a probation officer to be a technical violation "would render Code § 19.2-306.1 meaningless" and make the statutory distinctions enacted by the legislature "superfluous." Similarly, broadly reading the circuit court's order in Jalal's case as imposing court-ordered special probation conditions for sex offenders renders the statute "meaningless" and its language "superfluous."

---

[9] The circuit court found that the sex offender conditions were special conditions because they resulted from "an expert evaluation" and "because it's extremely important for someone that's been convicted of a crime like that to have treatment."

As the majority notes, it is not disputed that Jalal's other probation violations were technical violations. "Multiple technical violations . . . considered at the same revocation hearing" are not "considered separate technical violations for the purposes of sentencing." Code § 19.2-306.1(A). Because the circuit court erred in finding the Halloween-related condition was not a technical violation, it improperly sentenced Jalal to more than 14 days. Thus, I respectfully dissent and would reverse and remand for resentencing in accordance with the sentencing limitations of Code § 19.2-306.1.